903 So.2d 1 (2005)
Warren POPE
v.
NEW ORLEANS POLICE DEPARTMENT.
No. 2004-CA-1888.
Court of Appeal of Louisiana, Fourth Circuit.
April 20, 2005.
*2 Eric J. Hessler, Frank G. DeSalvo, A.P.L.C., New Orleans, LA, for Plaintiff/Appellee.
Sherry Landry, City Attorney, Joseph V. Dirosa, Jr., Chief Deputy City Attorney, Victor L. Papai, Jr., Assistant City Attorney, New Orleans, LA, for Defendant/Appellant.
(Court Composed of Judge PATRICIA RIVET MURRAY, Judge MAX N. TOBIAS, JR., and Judge EDWIN A. LOMBARD).
MAX N. TOBIAS, JR., Judge.
This is an appeal by the New Orleans Police Department ("NOPD") from a decision of the Civil Service Commission of the City of New Orleans ("the Commission"), which ordered that the discipline imposed on Sergeant Warren Pope ("Sergeant Pope") for neglect of duty by New Orleans Superintendent Edwin P. Compass, III, the appointing authority, be set aside. For the following reasons, we reverse the Commission and reinstate the discipline imposed on Sergeant Pope by the appointing authority.
Certain facts are not in dispute. On 1 July 2003, Sergeant Pope responded to a 911 call concerning a fight and an alleged aggravated assault that occurred in the parking lot of a bar at approximately 5:00 a.m. The call originated from Kelvin Burnett. Police Officer Christopher Prochaska ("Officer Prochaska") was riding with Sergeant Pope at the time of the call. Sergeant Pope responded immediately to the call. Upon arrival at the scene, Mr. Burnett informed the officers that several males, one of whom was armed with a knife, had attacked him. Mr. Burnett also pointed out a car that was leaving the scene, stating that the armed perpetrator was in the vehicle. There were other vehicles in the bar's parking lot, but they were all exiting the lot.
It is undisputed that Sergeant Pope did not exit his vehicle, interview witnesses, attempt to stop the car pointed out to him by Mr. Burnett, or even obtain the license plate number for that vehicle. In addition, before driving away, Mr. Burnett stated that Sergeant Pope threw his identification cards at him out the window of the vehicle and stated, "I don't have time for this b* * * * * *t. Handle your own stuff."
According to Officer Prochaska, Mr. Burnett was upset and his narrative of the altercation was unclear.[1] In an attempt to better understand, Sergeant Pope asked Mr. Burnett to repeat his story; in response, Mr. Burnett became more agitated. Although he confirmed that Mr. Burnett pointed towards a vehicle leaving the *3 parking lot as the one containing the man with the knife, Officer Prochaska explained that Sergeant Pope did not give chase because they were still trying to determine what was going on. By the time Mr. Burnett had calmed down and the officers understood what had happened, all the vehicles in the parking lot were gone. Officer Prochaska also stated that Sergeant Pope explained to Mr. Burnett that he was also subject to arrest if he was beating another person when his friends tried to stop him. Officer Prochaska confirmed that Sergeant Pope threw Mr. Burnett's identification cards out the window of the vehicle.
Later that morning, Mr. Burnett came to the First District Police Station to make a complaint against Sergeant Pope.[2] Sergeant Omar Diaz first spoke to Mr. Burnett about what had happened earlier that day, and then called Sergeant Pope to see if he had any knowledge of the incident. Sergeant Pope came to the front desk to speak with Mr. Burnett. During that conversation, Mr. Burnett complained that Sergeant Pope did not investigate the complaint and threw "the stuff back." Sergeant Pope replied, "Stop acting like a f* * * * * * faggot." After Mr. Burnett confronted him about his choice of words, Sergeant Pope said, "Oh, I'm sorry, I didn't mean to call you a faggot. Stop acting like a sissy." When Mr. Burnett again complained about his failure to investigate the complaint, Sergeant Pope said, "Why don't you get the f* * * out [sic] the station before I put you in jail."
Lieutenant Dwayne Scheuermann was appointed to investigate Sergeant Pope's behavior on 1 July 2003. During the investigation, Sergeant Pope made statements to him that Lieutenant Scheuermann later discovered were false. He also spoke with Mr. Burnett, Officer Prochaska, Sergeant Diaz, Officers Sharome Hankton and Stacy Tobias, (who were at the front desk when Mr. Burnett came into the station), Officer Shawn McAffee, and Officer Patrick O'Hearn.
As a result of his investigation, Lieutenant Scheuermann verified that no one had investigated Mr. Burnett's complaint and that Sergeant Pope had thrown his identification cards at him. He also verified that Sergeant Pope had called Mr. Burnett a "faggot," and a "sissy," and had threatened him with arrest if he did not leave the station.
At the conclusion of the investigation, Sergeant Pope was found to have sustained violations of courtesy, truthfulness, verbal intimidation, professionalism, and neglect of duty.[3] As a result, he received a thirty-day suspension and demoted to his last permanent classified position of Police Officer for violation of neglect of duty, a fifteen-day suspension for violation of courtesy, *4 a seven-day suspension for violation of truthfulness, a five-day suspension for violation of verbal intimidation, and a fifteen-day suspension for a violation of professionalism.
Sergeant Pope appealed to the Commission. After a full hearing, the Commission denied Sergeant Pope's appeal for all of the charges except for the charge of neglect of duty. The Commission found that Sergeant Pope responded quickly to the 911 call and that the presence of law enforcement in a timely manner ended the fight before anyone was hurt.[4] The Commission also found that Sergeant Pope did not neglect his duty by failing to give chase after another vehicle or interview any witnesses because Sergeant Pope was without support when he arrived on the scene and no witnesses remained in the parking lot to interview. Finally, relying on the testimony of Officer O'Hearn, the Commission cited the fact that Mr. Burnett chose not to make a complaint once he understood what Sergeant Pope had tried to explain to him earlier: that he could be subject to arrest himself for his involvement in the fight.
Based on the testimony presented, the Commission granted Sergeant Pope's appeal as it related to the charge of neglect of duty. It ordered that the appointing authority return Sergeant Pope to the rank of sergeant with all lost pay resulting from the demotion, remove the thirty-day suspension from his record and remit to Sergeant Pope all back pay and benefits for that period. In all other aspects, the appeal was denied.
The NOPD maintains that the Commission acted arbitrarily and capriciously by ignoring the finding of neglect of duty and ordering restoration of Sergeant Pope's rank, removal of the suspension, and payment of back pay and benefits.
The Commission has the authority to "hear and decide" disciplinary cases, which includes the authority to modify (reduce) as well as to reverse or affirm a penalty. La. Const. art. X, § 12; Branighan v. Department of Police, 362 So.2d 1221, 1223 (La.App. 4 Cir.1978). However, the authority to reduce a penalty can only be exercised if there is insufficient cause for imposing the greater penalty. Branighan, 362 So.2d at 1222. Thus, in the instant case, unless the Commission determined that there was insufficient cause for the appointing authority to impose the discipline, the penalty must stand.
The appointing authority is charged with the operation of his or her department and it is within his or her discretion to discipline an employee for sufficient cause. Joseph v. Department of Health, 389 So.2d 739, 741 (La.App. 4 Cir.1980); Branighan, supra. The Commission is not charged with such operation or disciplining. Id.
In Smith v. New Orleans Police Department, 99-0024, pp. 5-6 (La.App. 4 Cir. 9/22/99), 743 So.2d 834, 837-38, writ denied, 99-3242 (La.1/14/00), 753 So.2d 221, this court set forth the standard of appellate review regarding civil service disciplinary cases as follows:
In civil service disciplinary cases, an appellate court is presented with a multifaceted review function. Walters v. Department of Police of the City of New Orleans, 454 So.2d 106 (La.1984). First, as in other civil matters, deference will be given to the factual conclusions of the Commission. Hence, in deciding whether to affirm the Commission's factual findings, a reviewing court should apply the clearly wrong or manifest error rule *5 prescribed generally for appellate review. Walters, supra.

* * *
Second, in evaluating the Commission's determination as to whether the disciplinary action is both based on legal cause and commensurate with the infraction, the court should not modify the Commission's order unless it is arbitrary, capricious, or characterized by abuse of discretion. La. R.S. 49:964.
Legal cause exists whenever an employee's conduct impairs the efficiency of the public service in which the employee is engaged. Cittadino v. Department of Police, 558 So.2d 1311 (La.App. 4th Cir.1990). The Appointing Authority has the burden of proving the impairment. La. Const. Art. X, Sec. 8(A). The appointing authority must prove its case by a preponderance of the evidence. Cittadino, supra.

"Arbitrary or capricious" can be defined as the lack of a rational basis for the action taken. Shields v. City of Shreveport, 579 So.2d 961 (La.1991). A reviewing court should affirm the Civil Service Commission conclusion as to existence or cause for dismissal of a permanent status public employee when the decision is not arbitrary, capricious, or an abuse of the Commission's discretion, as presented in this case.
Employees with the permanent status in the classified civil service may be disciplined only for cause expressed in writing. La. Const., Art. X, Sec. 8(A). Disciplinary action against a civil service employee will be deemed arbitrary and capricious unless there is a real and substantial relationship between the improper conduct and the "efficient operation" of the public service. Newman v. Department of Fire, 425 So.2d 753 (La.1983).
In reviewing the Commission's findings of fact, the court's appropriate standard of review suggests that this court should not reverse or modify such a finding unless it is clearly wrong or manifestly erroneous. If the Commission's order is not arbitrary, capricious or characterized by abuse of discretion, this court should not modify the Commission's decision. Cittadino, supra.
In James v. Sewerage and Water Board of New Orleans, 505 So.2d 119 (La.App. 4 Cir.1987), we considered a decision of the Commission that reversed a five-day suspension of an employee and suggested a reprimand instead. In reversing the Commission and reinstating the suspension, we reaffirmed and reiterated the holdings in Joseph and Branighan, stating:
It is not the job of the Commission to decide who should be disciplined how. The appointing authority is charged with the operation of his department. He is the one who must run the department, an obviously necessary part of which is dismissing or disciplining employees. While he may not do so without cause, he may, and indeed must, within the exercise of sound discretion, dismiss or discipline an employee for sufficient cause. The Commission is not charged with such operation or such disciplining.
Id. at 121.
In Chapman v. Department of Police, 97-1384 (La.App. 4 Cir. 1/28/98), 706 So.2d 656, we rejected the Commission's reduction of a suspension from thirty days to ten days, holding that the Commission is not charged with the operation of the NOPD or disciplining its employees. We concluded that the Commission's action was simply a substitution of its judgment for the Superintendent's judgment. We found that the Superintendent had sufficient cause to impose the penalty and that the NOPD carried its burden of proof. The Commission's action was an arbitrary *6 and capricious interference with the authority of the Superintendent to manage his department.
Similarly, in Palmer v. Department of Police, 97-1593 (La.App. 4 Cir. 1/28/98), 706 So.2d 658, we reversed the Commission's reversal of the NOPD's imposition of a two-day suspension. In that case, the Commission substituted its judgment as to the appropriate sanction without an articulated basis for its action. We held the Commission acted arbitrarily and found legal cause for disciplinary action existed where the officer's actions clearly impaired the efficient operation of the public service.
In Stevens v. Department of Police, 00-1682 (La.App. 4 Cir. 5/9/01), 789 So.2d 622, we reversed the Commission's reduction of a suspension from fifteen days to ten days for an officer's running of a stop sign and causing an accident with another vehicle. At the hearing before the Civil Service hearing examiner, the parties had stipulated that at the time of the accident, Officer Stevens was responding to an emergency call and a large oak tree obstructed his view of the stop sign. Additionally, the NOPD called Deputy Superintendent Johnson, Chairman of the Traffic Accident Review Board that had investigated the accident, who testified that the Board had voted to suspend Officer Stevens based on his failure to yield the right of way and the severity of the accident. He further testified that Officer Stevens' police vehicle had sustained property damage totaling $7,570 and remained inoperable for nearly a year, which further burdened the NOPD's already heavily burdened fleet of patrol vehicles. The Commission concluded that the appointing authority had suspended Officer Stevens for just cause; nevertheless, it found that the fifteen-day suspension was not commensurate with the dereliction and reduced it to ten days in view of Officer Stevens' exemplary record and the appointing authority's previously imposed disciplinary action in similar cases. We held that the Commission's reduction of the suspension was an arbitrary and capricious interference with the Superintendent's authority to manage the police department. We said:
The public puts its trust in the police department as a guardian of its safety, and it is essential that the appointing authority be allowed to establish and enforce appropriate standards of conduct for its employees sworn to uphold that trust. Newman, supra. Indeed, the Commission should give heightened regard to the appointing authorities that serve as special guardians of the public's safety and operate as quasi-military institutions where strict discipline is imperative.
Id., p. 8, 789 So.2d at 627 [Emphasis supplied.]
Finally, in Thompson v. New Orleans Police Department, 02-1804 (La.App. 4 Cir. 4/1/03), 844 So.2d 940, we affirmed the Commission's decision to restore Officer Thompson with all back pay and benefits lost as the result of disciplinary action taken against him for neglect of duty. We found that the record on appeal contained no evidence whatsoever explaining why the appointing authority found that discipline, including a suspension, was warranted.
After reviewing the record before us, we find that the Commission acted arbitrarily and capriciously when it found that Sergeant Pope had not neglected his duty. That Sergeant Pope arrived on the scene rather promptly after being informed of the 911 call is only a part of his duty as an officer of the law. It is undisputed that following his arrival on the scene, Sergeant Pope did nothing; he never *7 even exited his vehicle.[5] The fact that his arrival on the scene may have ended the altercation is immaterial if not irrelevant. He could have easily left the scene momentarily to obtain a license plate number from the vehicle Mr. Burnett was certain carried the individual with the knife, even if was not prudent to stop the vehicle at that time.[6] Instead, Sergeant Pope chose to forgo any investigation whatsoever and treat Mr. Burnett with a lack of courtesy and professionalism. It is also irrelevant that Mr. Burnett subsequently declined to file a complaint. Sergeant Pope was first required to perform some type of investigation and then determine if a report was warranted. Whether Mr. Burnett later decided to pursue his complaint is of no moment to Sergeant Pope's duties as a police officer.
To the extent that Mr. Burnett's physical appearance played any part in Sergeant Pope's decision to remain in his vehicle and leave without making a report is equally irrelevant.[7] The testimony established that Mr. Burnett was very upset by the events that had transpired and wanted to make a complaint; a police officer cannot make a decision on whether to perform his duties based on the physical appearance of the complainant.
Based on the foregoing, although we might think that the penalty imposed by the appointing authority is excessive, we find that the appointing authority has established by a preponderance of the evidence that it had cause for disciplining Sergeant Pope, an individual functioning in a quasi-military institution where strict discipline is a necessity, for violating its internal rule concerning neglect of duty in the manner that it did. Unlike Thompson, supra, we have before us evidence establishing that discipline was warranted. We are required to defer to the appointing authority in its determination that Sergeant Pope neglected his duty within the broad range of duties of police officers. Accordingly, the decision of the Civil Service Commission is reversed and the discipline imposed by the appointing authority upon Sergeant Pope is reinstated.

REVERSED AND RENDERED.
MURRAY, J., Dissents With Reasons.
MURRAY, J., Dissents With Reasons.
Before the Civil Service Commission, the appointing authority (here in the City) has the burden of proving by a preponderance of the evidence not only that the complained-of conduct occurred, but also legal causei.e., that the conduct impaired the efficient operation of the governmental entity. Barquet v. Department of Welfare, 620 So.2d 501, 505 (La.App. 4th Cir.1993). The Commission has a duty to determine independently from the facts presented whether the appointing authority has legal cause for taking disciplinary action and, if so, whether the discipline imposed is commensurate with the offense. Walters v. Department of Police of City of New Orleans, 454 So.2d 106 (La.1984).
*8 In reviewing the Commission's decision, an appellate court, as the majority correctly notes, has a multifaceted review function. First, an appellate court should apply the manifest error standard in deciding whether to affirm the Commission's factual findings. Second, in reviewing the Commission's exercise of its discretion in determining whether the disciplinary action is based on legal cause and, if so, whether the discipline is commensurate with the offense, an appellate court should not modify the Commission's decision unless it is arbitrary, capricious or characterized by abuse of discretion. Arbitrary or capricious, in this context, means the absence of a rational basis for the action taken. Bannister v. Department of Streets, 95-0404, p. 8 (La.1/16/96), 666 So.2d 641, 647.
In this case, the principal violation the City charged Sergeant Pope with was violating the internal rule concerning neglect of duty. The City based this charge on the allegation that Sergeant Pope failed to thoroughly investigate Mr. Burnett's criminal complaint. Particularly, this charge included Sergeant Pope's failure to (i) stop the suspect's vehicle identified by Mr. Burnett, (ii) seize the knife involved in the incident, and (iii) interview the witnesses and suspects.
The Commission enumerated the following reasons for finding the City failed to prove neglect of duty charge; to-wit:
 Sergeant Pope responded quickly to the 911 call, which ended the fight before anyone was harmed;
 Based on Officer Prochaska's testimony, Sergeant Pope's failure to give chase after the vehicle Mr. Burnett identified as possibly containing the other individuals involved in the fight did not amount to a neglect of duty;
 Given that the "alleged suspects" left the scene immediately upon Sergeant Pope's arrival and before Mr. Burnett satisfactorily explained why he called for the police, Sergeant Pope did not neglect his duty by failing to interview witnesses;
 There was no evidence that any witnesses were available to interview given that every vehicle in the parking lot had left when the police arrived.[1]
Characterizing the Commission's finding that Sergeant Pope had not neglected his duty as arbitrary and capricious, the majority reasons that arriving promptly on the scene in response to a 911 call is only a part of an officer's duty and that it is immaterial, if not irrelevant, that the officer's arrival ended the fight. The majority speculates that Sergeant Pope easily could have left the scene momentarily to get the license plate of the vehicle that Mr. Burnett was certain contained the person armed with the knife.[2] The majority finds it irrelevant that Mr. Burnett subsequently declined to file a complaint and concludes that Sergeant Pope nonetheless was required to perform an investigation. Finally, the majority finds Mr. Burnett's physical appearance should not have been a factor in Sergeant Pope's decision to remain in his police vehicle and to leave the scene without making a report.
Although the majority cites the applicable standard as arbitrary and capricious, *9 the Commission's findings reflect that this case involves a credibility determination, which should have been reviewed under the manifest error standard. The Commission's findings indicate that it found credible Officer Prochaska's testimony regarding Sergeant Pope's failure to chase after the vehicle Mr. Burnett identified. On this point, Officer Prochaska's testimony, as summarized by the Commission, differs from Mr. Burnett's testimony in several significant respects. Mr. Burnett's testimony was that he calmly explained to Sergeant Pope that he was attacked by a group of individuals and that one of them had a knife. Mr. Burnett testified that he then pointed out the car carrying those individuals to Sergeant Pope as that car was driving away.
In contrast, Officer Prochaska testified that Mr. Burnett was upset, and his story was unclear. He further testified that Sergeant Pope, in an attempt to better understand Mr. Burnett, asked him to repeat his story. Continuing, he testified that Mr. Burnett responded by becoming more upset, pointing towards a vehicle that was leaving the parking lot, and stating, "Look, the car over there, I think that's the guy in that car, go stop him." Officer Prochaska explained that Sergeant Pope did not suspend his interview of Mr. Burnett to chase the vehicle because the officers were still trying to get Mr. Burnett's story straight. By the time Mr. Burnett calmed down and the officers got his story straight, the vehicle Mr. Burnett had identified, as well as all the other vehicles in the parking lot, had departed. Hence, there were no witnesses to interview. Officer Prochaska's testimony supports the Commission's factual findings that it was not a neglect of duty for Sergeant Pope to fail either to chase the vehicle or to interview suspects or witnesses.
Given the Commission's factual findings are supported by the record, those findings are not manifestly erroneous. Based on those factual findings, it cannot be said that the Commission was arbitrary or capricious in finding Sergeant Pope's actions did not constitute neglect of duty and were not a legal cause for taking disciplinary action.
In support of its contrary conclusion, the majority cites a line of cases that stand for the proposition that the Commission cannot substitute its judgment for the appointing authority's insofar as the appropriate discipline. However, those cases are distinguishable in that they involve situations in which the appointing authority met it burden of proving legal cause and the issue was the appropriate discipline under the circumstances. Such is not the case here. As discussed above, the issue here is whether the City carried its burden of proving the complained of conductneglect of dutyoccurred. The Commission concluded that the City did not. Because I cannot say that conclusion is manifestly erroneous, I would affirm.
NOTES
[1] Mr. Burnett was described as a "large, muscular man," who was about 6'4" or 6'5" tall and weighed approximately 250-300 pounds.
[2] The record also indicates that Mr. Burnett came to the police station at some point that morning to make a complaint against the individual(s) he claimed had assaulted him. Officer O'Hearn explained to Mr. Burnett that he himself could be subject to arrest if he had started the fight. At that point, Mr. Burnett said he would think about making a complaint and left the station. No report was ever taken.
[3] Rule 4, § 4 of the Performance of Duty, Neglect of Duty [contained in the rules regulating police officers] states in pertinent part:

A. Each member, because of his grade and assignment, is required to perform certain duties and assume certain responsibilities. A member's failure to properly function in either or both of these areas constitutes a neglect of duty.
* * *
C. Enumerated Acts/ Omissions
1. Failing to take appropriate and necessary police action.
* * *
4. Failing to make a written report when such is indicated.
[4] The Commission stated: "Perhaps, if he had chosen to ignore the call, the Appointing Authority could have found that he neglected his duty."
[5] We also find it disturbing that Sergeant Pope simply drove away from the scene leaving Mr. Burnett alone without first determining if the altercation could resume after his departure.
[6] The Commission noted that Sergeant Pope was without support when he arrived on the scene. He had no backup to call because there was only one two-man unit working the district at the time. Further, Officer Prochaska was on light duty because of an injury.
[7] As the common idiom states: "You can't judge a book by its cover." Thus what Mr. Burnett looked like or sounded like is and was totally irrelevant to any consideration of what Sergeant Pope should have done in performing his duty as a sworn officer of the law.
[1] The Commission also relied on the fact, as reflected in Officer O'Hern's testimony, Mr. Burnett chose not to make a complaint once he understood what Sergeant Pope had tried to explain to him at the scene-that he was subject to arrest himself for his involvement in the fight.
[2] The majority recognizes that it may not have been prudent for Sergeant Pope to stop the vehicle and that he lacked backup support.