MICHAEL E. KIRBY, Judge.
 

 |! This is an appeal by Officer Noel Sanders (Officer Sanders) from a decision of the Civil Service Commission for the City of New Orleans (Commission), which denied Officer Sanders’ appeal of dismissal im
 
 *892
 
 posed by the New Orleans Police Department. We affirm for reasons that follow.
 

 The appointing authority, the New Orleans Police Department (NOPD), hired Officer Sanders on March 2, 1997, and promoted Officer Sanders to his current class on December 14, 1997. On May 1, 2001, while on duty, Officer Sanders received a telephone call shortly before his shift ended from his fiancée, Gwana
 
 [1]
 
 Green (Miss Green). Miss Green informed Officer Sanders that his son, Jaih,
 
 [2]
 
 sat in a tub of hot water, leaving his skin red. Miss Green is not Jaih’s biological mother. The testimony at the hearing indicated, that Jaih was six years old at the time of the incident. Miss Green allegedly told Officer Sanders that she had called someone who recommended going to a pharmacy and getting ointment for Jaih’s burns. Officer Sanders’ recollection was that the person called by Miss Green was “a doctor or something like that.”
 

 12After his shift ended at 11:00 p.m.,
 
 Officer
 
 Sanders proceeded to pick up his younger son and then arrived home. Officer Sanders looked at Jaih’s wounds and asked Jaih whether or not he was in pain. Jaih replied that he was not in pain, but Officer Sanders noticed his skin was red. Officer Sanders testified that he contacted his partner, whose sister is a nurse, and then contacted the nurse, who explained what Officer Sanders should do. Officer Sanders also telephoned his mother, informing her of his arrival at home and asking her opinion on Jaih’s injuries. Counsel for Officer Sanders agreed to a stipulation that Officer Sanders’ mother gave a statement in which she claimed to have told Officer Sanders three times during their conversation that evening to take Jaih to the hospital for treatment.
 
 [3]
 
 Officer Sanders then telephoned the commander of the child abuse section and sought advice on the injuries suffered by Jaih.
 

 When Officer Sanders arrived home, Miss Green went to a pharmacy and purchased salve and gauze. Upon Miss Green’s return, Officer Sanders and Miss Green placed salve on Jaih, and wrapped him in gauze. Officer Sanders awoke the next morning and checked on Jaih around 7:30 a.m. or
 
 8:00
 
 a.m. Officer Sanders observed that Jaih’s skin had started to peel. Officer Sanders contacted Miss Green at work and asked if she learned in her inquiries the night before what to do if the skin began to peel. Miss Green informed Officer Sanders that she learned if the situation worsened, Jaih should be brought to the hospital. Officer Sanders stated that he determined that Jaih required a hospital visit, but the evidence established that an ambulance was not called until 3:10 p.m. that day, and both |nattorneys agreed to the stipulation that the call for the ambulance was placed by Officer Sanders’ mother.
 

 Jaih’s burn wounds covered 55-60% of his body. Because the wounds were determined to be second and third degree burns, Jaih was airlifted to the Shriners Burn Unit located in Galveston, Texas. Miss Green and Officer Sanders were arrested on May 3, 2001, and charged with cruelty to a juvenile. As a result of the arrest, Officer Sanders was suspended for
 
 *893
 
 120 days. In October of 2004, Miss Green was convicted.
 

 In January of 2007, as a result of the victim not appearing for trial in the criminal case against Officer Sanders, a
 
 nolle prosequi
 
 was entered by the assistant district attorney. Thereafter, the NOPD completed its investigation of Officer Sanders for possible violation of internal rules. The NOPD protocol, at the time of the incident herein, was to allow the criminal matter to proceed when an officer is arrested. After completion of the criminal matter, the NOPD would then pursue any administrative action.
 

 A disciplinary hearing was held on April 11, 2007. On April 12, 2007, Superintendent Warren J. Riley issued a disciplinary letter to Officer Sanders, which suspended Officer Sanders for five days for a sustained violation of Professionalism and dismissed Officer Sanders from the NOPD for a sustained violation of Adherence to Law, to-wit: La. R.S. 14:93.2.3., Second Degree Cruelty to Juveniles.
 

 Officer Sanders appealed to the Commission. The Commission appointed a hearing examiner, who received testimony on December 12, 2007, and January 3, 2008. The hearing examiner issued a report on February 29, 2008, and the Commission issued a decision on March 24, 2008, denying Officer Sanders’ appeal |4to the Commission. Officer Sanders now seeks review of the decision of the Commission.
 

 The Commission has authority to “hear and decide” disciplinary cases, which includes the authority to modify (reduce) as well as to reverse or affirm a penalty. La. Const. art. X, § 12;
 
 Pope v. New Orleans Police Dept.,
 
 2004-1888, p. 5 (La. App. 4 Cir. 4/20/05), 903 So.2d 1, 4. The appointing authority is charged with the operation of its department and it is within its discretion to discipline an employee for sufficient cause. The Commission is not charged with such discipline. The authority to reduce a penalty can only be exercised if there is insufficient cause for imposing the greater penalty.
 
 Pope,
 
 2004-1888, pp. 5-6, 903 So.2d at 4.
 

 The appointing authority has the burden of proving, by a preponderance of the evidence, that the complained of activity or dereliction occurred, and that such dereliction bore a real and substantial relationship to the efficient operation of the appointing authority.
 
 Cure v. Dept. of Police,
 
 2007-0166, p. 2 (La.App. 4 Cir. 8/1/07), 964 So.2d 1093, 1094,
 
 citing Marziale v. Dept. of Police,
 
 2006-0459, p. 10 (La.App. 4 Cir. 11/8/06), 944 So.2d 760, 767. The protection of civil service employees is only against firing (or other discipline) without cause. La. Const, art. X, § 12;
 
 Cornelius v. Dept. of Police,
 
 2007-1257, p. 8 (La.App. 4 Cir. 3/19/08), 981 So.2d 720, 724,
 
 citing Fihlman v. New Orleans Police Dept.,
 
 2000-2360, p. 5 (La.App. 4 Cir. 10/31/01), 797 So .2d 783, 787.
 

 The decision of the Commission is subject to review on any question of law or fact upon appeal to this Court, and this Court may only review findings of fact using the manifestly erroneous/clearly wrong standard of review. La. Const, art. X, § 12;
 
 Cure,
 
 2007-0166, p. 2, 964 So.2d at 1094. In determining whether the ^disciplinary action was based on good cause and whether the punishment is commensurate with the infraction, this Court should not modify the Commission order unless it was arbitrary, capricious, or characterized by an abuse of discretion.
 
 Id.
 
 A decision of the Commission is “arbitrary and capricious” if there is no rational basis for the action taken by the Commission.
 
 Cure,
 
 2007-0166, p. 2, 964 So.2d at 1095.
 

 The NOPD bore the burden of proving that the complained-of conduct or derelic
 
 *894
 
 tion occurred and that the complained-of conduct or dereliction impaired the efficient operation of the NOPD. The NOPD alleged Officer Sanders violated Rule 2, Moral Conduct (Adherence to the Law) which provides:
 

 Employees shall act in accordance with the constitutions, statutes, ordinances, administrative regulations and the official interpretations thereof, of the United States, the State of Louisiana and the City of New Orleans, but when in another jurisdiction shall obey the applicable laws. Neither ignorance of the law, its interpretations nor failure to be physically arrested and charged shall be regarded as a valid defense against the requirements of this rule.
 

 The NOPD stated that Officer Sanders violated La. R.S. 14:93.2.3, relative to second degree cruelty to juveniles, which provides:
 

 Second Degree Cruelty to Juveniles is the intentional or criminally negligent mistreatment or neglect by anyone over the age of seventeen to any child under the age of seventeen which causes serious bodily injury or neurological impairment to that child.
 

 For purposes of this Section, “serious bodily injury” means bodily injury involving protracted and obvious disfigurement or protracted loss or impairment of the function of a bodily member, organ, or mental faculty, or substantial risk of death.
 

 The disciplinary letter alleged that Officer Sanders’ failure to act placed Jaih at substantial risk of death.
 

 IfiThe NOPD also alleged Officer Sanders violated the rule on professionalism, which is found in Rule 3, Professional Conduct, and which provides:
 

 Employees shall conduct themselves in a professional manner with the utmost concern for the dignity of the individual with whom they are interacting. Employees shall not unnecessarily inconvenience or demean any individual or otherwise act in a manner which brings discredit to the employee of the Police Department.
 

 The disciplinary letter went on to allege that Officer Sanders violated Rule IX of the Civil Service Commission Rules, Section 1.1, Maintaining Standards of Service which provides:
 

 When an employee in the classified service is unable or unwilling to perform the duties of his/her position in a satisfactory manner, or has committed any act to the prejudice of the service, or has omitted to perform any act it was his/ her duty to perform, or otherwise has become subject to corrective action, the appointing authority shall take action warranted by the circumstances to maintain the standards of effective service. The action may include one or more of the following:
 

 (1) removal from service.
 

 (2) involuntary retirement.
 

 (3) reduction in pay within the salary range for the employee’s classification, subject to the provisions of Rule IV, Section 8.
 

 (4) demotion to any position of a lower classification that the employee is deemed by the appointing authority and the Director to be competent to fill, accompanied by a reduction in pay, which is within the salary range for the lower classification, subject to the provisions of Rule IV, Section 8.
 

 (5) suspension without pay not exceeding one hundred twenty (120) calendar days.
 

 (6) fine.
 

 |7In denying Officer Sanders’ appeal, the Commission noted that even though Offi
 
 *895
 
 cer Sanders stated that he thought he was properly caring for his son by applying salve and gauze when he returned home on the evening of May 1, 2001, he also stated that he became aware the next morning at 7:30 a.m. or 8:00 a.m. that his son needed medical attention because his condition had worsened overnight with his skin peeling from his body. Even with this admitted awareness, Officer Sanders still did not seek medical attention for his son. The record established that Emergency Medical Services (EMS) was not summoned until 3:10 p.m. that day, more than six hours after Officer Sanders noticed that his son’s skin was peeling from his body, and that the call to EMS was placed by Officer Sanders’ mother. As noted by the Commission, “[i]t is conceivable that the Appellant’s son may never have received appropriate medical attention, but for the Appellant’s mother’s intervention several hours later.” The Commission found that Officer Sanders failed to provide a plausible explanation for his continuing failure to take action for the care of his son.
 

 The Commission found that the Appointing Authority (NOPD) established by a preponderance of evidence that it terminated Officer Sanders for cause. The Commission determined that Officer Sanders’ failure to act constituted cruelty to a juvenile. The Commission further found that his explanation was not credible, and “the clear inference is that the Appellant failed to act to avoid responsibility.” It found that Office Sanders “kept the child away from the hospital to avoid public scrutiny and to avoid the consequences of his and his girlfriend’s negligence.”
 

 The evidence presented at the Commission hearing supports the findings of the NOPD and the Commission that Officer Sanders violated the NOPD’s internal ^regulations regarding Adherence to Law (Second Degree Cruelty to Juveniles), in that his failure to act put his son at substantial risk of death. We agree with the Commission’s finding that the NOPD had cause for terminating Officer Sanders’ employment.
 

 The Commission also denied Officer Sanders’ appeal of the NOPD’s finding that he violated the department’s rule regarding professionalism. An officer’s actions off-duty can give rise to a violation of the rule on professionalism.
 
 See Staehle v. Dept. of Police,
 
 98-0216 (La.App. 4 Cir. 11/18/98), 723 So.2d 1031. In this instance, Officer Sanders’ failure to act with regard to seeking prompt medical attention for his son brought discredit to him as an NOPD employee. We agree with the Commission that the NOPD had cause to suspend Officer Sanders for violating its internal rules regarding professionalism.
 

 Officer Sanders’ suspension following his arrest on the charge of second degree cruelty to a juvenile obviously caused him to miss work, which impaired the efficient operation of the police department by having one less officer patrolling the streets of New Orleans. Furthermore, Officer Sanders’ failure to act in this personal situation involving his own son’s medical emergency casts doubt on his ability to properly handle emergency situations involving the public that are faced by police officers in their jobs. Thus, the NOPD carried its burden of proving a real and substantial relationship between Officer Sanders’ failure to act in his son’s medical emergency and the efficient operation of the NOPD.
 

 The Commission’s denial of plaintiffs appeal was neither arbitrary nor capricious, and was not an abuse of discretion. Accordingly, the judgment of the Commission is hereby affirmed
 

 AFFIRMED.
 

 [1]
 

 .The transcript offers various spellings for Miss Green's first name, including "Gwana” and "Wanda.” "Gwana” appears on an exhibit, City 2, and is the spelling we shall utilize in this opinion.
 

 [2]
 

 . The transcript refers to the child as "Jared” as well as "Jaih.” "Jaih” also appears on the exhibit City 2 and is the spelling we shall utilize in this opinion.
 

 [3]
 

 . The statement of Ms. Lena Sanders is not in the record.