JOY COSSICH LOBRANO, Judge.
| Jeffrey Winn (‘Winn”), a police captain with permanent status with the New Orleans Police Department (“NOPD”), timely appealed the decision of the New Orleans Civil Service Commission (“CSC”), upholding his termination and suspension by NOPD Superintendent Roñal Serpas (“Supt. Serpas”), the appointing authority. For the reasons that follow, we affirm.
In the aftermath of Hurricane Katrina, the NOPD Special Weapons and Tactical Unit (swat team) was using the Paul Ha-bans Elementary School in Algiers as its base of operations and living quarters. Winn was both the commanding officer of the swat team and the ranking officer posted at Habans Elementary School.
On the morning of September 2, 2005, an automobile carrying a dead body was brought into the school’s enclosed parking lot. The body was later determined to be that of Henry Glover. After determining that Glover was dead, Winn instructed his subordinates to move the automobile and body to the river side of the levee located behind the NOPD’s Fourth District Police Station because the ^Coroner’s Office and *745 morgue were not in operation at the time. Officer Greg McRae (“McRae”) drove the vehicle to the levee and then on his own initiative proceeded to set the vehicle on fire. At the time, Winn did not know that Glover had been shot by a police officer, nor was he aware that the vehicle and body had been burned.
In November of 2005, NOPD Captain Tami Brisset (“Brisset”) was stationed at the Royal Sonesta Hotel in the French Quarter to handle administrative duties. While stationed there, she received a complaint from a citizen indicating there was a burned body in a burned vehicle on the river side of the levee located behind the Fourth District Police Station. Brisset contacted Captain Donald Curóle (“Cu-role”), the commander of criminal investigations with the NOPD’s Public Integrity Bureau (“PIB”) because the PIB was operational and no other investigative structure was in place at the time. Shortly thereafter, Brisset spoke to Winn regarding the complaint because she knew he was working in the Fourth District. Winn deduced that the burned vehicle and burned body were the same vehicle and body he had previously ordered taken to that location. Winn told Brisset that he would contact Curóle and tell him what he knew regarding the complaint. Thereafter, Winn contacted Curóle and told him what he knew about the incident.
In December of 2008, an article appeared in the press concerning police misconduct in the death of Glover. Approximately the same time, the federal government through the FBI, U.S. Attorney’s Office and Department of Justice | ¡¡Civil Rights Division began looking into the circumstances of Glover’s death. After learning of the federal investigation, Winn feared he might be subject to prosecution in the matter despite the fact that he had no involvement in the death or burning of Glover’s body. Therefore, Winn retained attorney Eric Hessler (“Hessler”) to represent him regarding the matter.
In May of 2009, Winn had a conversation with Lt. Dwayne Scheuermann (“Scheuermann”), another NOPD officer who was present at Habans Elementary School at the time of the Glover incident. During this conversation, Scheuermann indicated that he thought Winn knew that McRae had burned Glover’s body. Thereafter, Winn met with Hessler to seek legal advice. Hessler advised his client to invoke his Fifth Amendment privilege against self-incrimination and not to report the conversation. Winn followed the advice of his attorney.
In December of 2010, Winn was subpoenaed to testify as a witness in the federal prosecution of certain NOPD officers involved in the death of Glover and the events immediately thereafter.* Following his testimony in this matter, PIB investigator Capt. John Thomas compelled a statement from Winn. On May 25, 2011, following a disciplinary hearing, the NOPD terminated Winn for violation of internal rules regarding neglect of duty (two counts) [1]. Winn was also suspended pfor ten (10) days for violating the internal rules regarding professionalism[2]. Winn *746 appealed his termination and suspension to the CSC.
Following a hearing before the CSC hearing examiner, the hearing examiner recommended that Winn’s appeal be granted as to all charges. However, the CSC disagreed. On November 6, 2012, the CSC rendered a decision holding that the appointing authority had legal cause to terminate Winn for neglect of duty because he failed to timely report the misconduct of a subordinate officer (McRae) whom he knew had burned Glover’s body. The CSC also concluded the ten days suspension was warranted for Winn’s violation of the internal rule regarding professionalism given his neglect of duty. It is from this judgment that Winn appeals to this Court.
On appeal, Winn argues that CSC erred in determining that he committed neglect of duty by not timely reporting misconduct by a subordinate officer. Winn contends in light of the then ongoing federal investigation, he followed the advice of his attorney who had advised him to exercise his Fifth Amendment right against self-incrimination and not report McRae’s misconduct based on the United States Supreme Court decisions in Garrity v. New Jersey, 385 U.S. 493, 87 S.Ct. 616, 17 L.Ed.2d 562 (1967) and Gardner v. Broderick, 392 U.S. 273, 88 S.Ct. 1913, 20 L.Ed.2d 1082 (1968). Given the unique circumstances of his case, Winn contends the CSC’s decision to uphold his termination was arbitrary, capricious, and an abuse of its discretion.
The CSC has authority to “hear and decide” disciplinary cases, which includes the authority to modify (reduce) as well as to reverse or affirm a penalty. La. Const. Art. X, § 12; Pope v. New Orleans Police Dept., 2004-1888, p. 5 (La.App. 4 Cir. 4/20/05), 903 So.2d 1, 4. The appointing authority is charged with the operation of its department, and it is within its discretion to discipline an employee for sufficient cause. Id. at 6, 903 So.2d at 4. “Legal cause exists whenever an employee’s conduct impairs the efficiency of the public service in which the employee is engaged.” Id. at 6, 903 So.2d at 5. The CSC is not charged with such discipline. “[T]he authority to reduce a penalty can only be exercised if there is insufficient cause for imposing the greater penalty.” Id. at 5-6, 903 So.2d at 4.
“The appointing authority has the burden of proving, by a preponderance of the evidence, that the complained of activity or dereliction occurred, and that such dereliction bore a real and substantial relationship to the efficient operation of the appointing authority.” Cure v. Dept. of Police, 2007-0166, p.2 (La.App. 4 Cir. 8/1/07), 964 So.2d 1093, 1094, citing Marziale v. Dept. of Police, 2006-0459, p.10 (La.App. 4 Cir. 11/8/06), 944 So.2d 760, 767. “The protection of civil service employees is only against firing (or other discipline) without cause.” Cornelius v. Dept. of Police, 2007-1257, 2007-1258, p.7 (La.App. 4 Cir. 3/19/08), 981 So.2d 720, 724, citing Fihlman v. New Orleans Police Dept., 2000-2360, p. 5 (La.App. 4 Cir. 10/31/01), 797 So.2d 783, 787.
The decision of the CSC “is subject to review on any question of law or fact upon appeal to this Court, and this Court may only review findings of fact using the manifestly erroneous/clearly wrong standard of review.” Cure, 2007-0166, p. 2, *747 964 So.2d at 1094, citing La. Const. Art. X, § 12. In determining whether the disciplinary action was based on good cause and whether the punishment is commensurate with the infraction, this Court should not modify the CSC order unless it was arbitrary, capricious, or characterized by an abuse of discretion. Id. at 2, 964 So.2d at 1094-95. A decision of the CSC is “arbitrary and capricious” if there is no rational basis for the action taken by the CSC. Id. at 2, 964 So.2d at 1095.
The issue in this appeal is whether the appointing authority had legal cause to discipline Winn for neglect of duty and unprofessional conduct.
The record in this case indicates that Winn knew as early as November 2005 that the vehicle containing Glover’s body was burned and the incident was reported to the PIB. Winn testified at the CSC hearing that Brisset called him in November 2005, informing him that she received a citizen complaint about a body burned inside a burned vehicle behind the Fourth District Police Station. Brisset further advised Winn that she called PIB to report the complaint. Winn responded that he would also notify PIB. Winn admitted that during his conversation with |7Brisset he immediately made the connection between the burned vehicle and body behind the station and the vehicle and body he had ordered relocated in September.
The record further disclosed that in May of 2009, Scheuermann told Winn that McRae burned the vehicle and the body that Winn had ordered relocated to the river side of the levee behind the Fourth District Police Station. Scheuermann also indicated he thought Winn knew McRae had burned Glover’s body. Winn testified that Scheuermann’s version of the events concerned him because it suggested he was part of a cover up. Winn then met with Hessler who advised him to invoke his Fifth Amendment privilege against self-incrimination and not report the conversation. Winn followed the advice and withheld the information from his superiors and the PIB.
Supt. Serpas testified that Winn, a captain, held a supervisory position and was held to a higher standard than a lower rank officer. He explained that the NOPD internal rules impose a continuing duty on a supervisor to report to his superiors and the PIB any misconduct by officers under his command. According to Supt. Serpas, Winn’s failure to report McRae’s misconduct when he learned of it was a violation of Rule 4, Neglect of Duty, and impaired the efficient operation of the NOPD by denying it an opportunity to investigate a possible crime involving one or more police officers. He also explained that Winn’s violation of Rule 3 on Professionalism was predicated on his neglect of duty violation.
The Rules of the Civil Service Commission for the City of New Orleans provide that when a classified employee has committed an act to the prejudice of |8the service or otherwise has been subjected to corrective action, the appointing authority shall take action as warranted by the circumstances to maintain the standards of effective service. See Rule IX, § 1.1. This action may include removal from the classified service, see Rule IX, § 1.1(a), and suspension without pay not exceeding one hundred twenty (120) calendar days, see Rule IX, § 1.1(e).
Given Winn’s admission that he knowingly withheld the information regarding McRae’s misconduct from both his superiors and the PIB, and the testimony of Supt. Serpas that Winn violated NOPD internal rules by neglecting his duties, to the detriment of the department, we find the appointing authority had cause to discipline Winn. The imposed termination and *748 suspension are based on the evidence and commensurate with the dereliction. Thus, we do not find the CSC was arbitrary and capricious or abused its discretion by denying Winn’s appeal and upholding his termination and suspension.
Furthermore, we find Winn’s Fifth Amendment privilege against self-incrimination did not excuse him of his ongoing duty to report the misconduct of other police officers. The Fifth Amendment provides that no person “shall be compelled in any criminal case to be a witness against himselfi.]” See U.S. Const, amend. V. At the point in May 2009, when Scheuermann told Winn that he thought Winn knew McRae had burned the vehicle containing Glover’s body, Winn had not been not compelled in any criminal case to be a witness against himself or to report misconduct of his own. Rather, Winn was obligated to report |9in a timely manner any misconduct of other NOPD officers, including those under his command.
Lastly, we find the Garrity, supra, and Gardner, supra, cases are distinguishable from the present matter. In Garrity, a police officer during an Attorney General investigation was told that any statement he made might be used against him in a criminal proceeding and that he had the privilege to refuse to answer, but that such refusal would subject him to forfeiture of office. He answered, and his answers were used over objection in a subsequent prosecution. The Court excluded the evidence, holding that a state cannot use the threat of discharge to secure incriminating statements from an employee, even a policeman. In that case, Justice Douglas stated that “policemen, like teachers and lawyers, are not relegated to a watered-down version of constitutional rights.” 385 U.S. at 500, 87 S.Ct. at 620.
In Gardner, a policeman was discharged because he refused in a grand jury investigation to waive immunity from prosecution based on his answers, after being told that he would be discharged if he did not sign the waiver. Observing that the officer was presented with a choice between surrendering his constitutional rights or his job, the Court held that a state cannot discharge an employee for refusing to waive a constitutionally guaranteed right. The Court noted, however, that a policeman owes his entire loyalty to the state and that the privilege would not bar his dismissal for refusal to answer questions relating specifically, directly and narrowly to his official duties, if he were not required to waive immunity with | inrespect to use of the answers or the fruits thereof in a subsequent criminal prosecution. 392 U.S. at 277-78, 88 S.Ct. at 1916.
Here, Winn was not the subject of a criminal investigation or a part of a criminal prosecution when he failed to report the information he had in May 2009 about the McRae’s misconduct. Additionally, there was no demand or threat made of Winn to waive the protections afforded him under Garrity, Gardner, and La. R.S. 40:2531(B)(5).[3] Thus, unlike in Garrity and Gardner, there was no risk of self-incrimination in this case.
Accordingly, for the reasons set forth herein, we affirm the decision of the CSC to deny Winn’s appeal and uphold his termination and suspension by the appointing authority.
AFFIRMED.
McKAY, C.J., Dissents With Reasons.

 See United States v. David Warren, et al., Crim. Action No. 10-154(E.D. La.).

. NOPD Operations Manual, Rule ^Performance of Duty, paragraph 4(a), provides:
4. Neglect of Duty
a. Each employee, because of his grade and assignment, is required to perform certain duties and assume certain responsibilities. An employee’s failure to properly function in either or both of these areas constitutes a neglect of duty.

. NOPD Operations Manual, Rule 3: Professional Conduct, paragraph 1, provides:
1. Professional
*746 Employees shall conduct themselves in a professional manner with the utmost concern for the dignity of the individual with whom they are interacting. Employees shall not unnecessarily inconvenience or demean any individual or otherwise act in a manner which brings discredit to the employee or the Police Department.

. La. R.S. 40:2531(B)(5) provides: “No statement made by the police employee or law enforcement officer during the course of administrative investigation shall be admissible in a criminal proceeding.” See also Evans v. DeRidder Municipal Fire and Police Civil Service Board, 2001-2466 (La.4/3/02), 815 So.2d 61.