| ANTHONY EDENFIELD | * | NO. 2022-CA-0171 |
|---|---|---|
| VERSUS | * | COURT OF APPEAL |
| NEW ORLEANS POLICE DEPARTMENT | * | FOURTH CIRCUIT |
| | * | STATE OF LOUISIANA |

* * * * * * *

APPEAL FROM
CITY CIVIL SERVICE COMMISSION ORLEANS
NO. 9232
Honorable Jay Alan Ginsberg, Hearing Officer
* * * * * *
**JUDGE SANDRA CABRINA JENKINS**
* * * * * *

(Court composed of Chief Judge Terri F. Love, Judge Sandra Cabrina Jenkins, Judge Tiffany Gautier Chase)

Eric J. Hessler
ATTORNEY AT LAW
320 N. Carrollton Avenue
Suite 202
New Orleans, LA 70119

    COUNSEL FOR PLAINTIFF/APPELLEE


Elizabeth Robins
Michael J. Laughlin
Churita H. Hansell
Kevin C. Hill
Donesia D. Turner
CITY ATTORNEY
CITY OF NEW ORLEANS
1300 Perdido Street, Room 5E03
New Orleans, LA 70112

    COUNSEL FOR DEFENDANT/APPELLANT

**REVERSED**
**OCTOBER 10, 2022**

New Orleans Police Department appeals the Civil Service Commission's (the "Commission") decision that granted in part and denied in part, Sgt. Anthony Edenfield's appeal. Finding that the NOPD established legal cause for taking disciplinary action and terminating Sgt. Edenfield, we reverse the Commission's decision and reinstate the termination of Sgt. Edenfield.

**FACTUAL AND PROCEDURAL BACKGROUND**

In May and June of 2020, Sgt. Edenfield, a sergeant with permanent status by the NOPD posted on his personal Facebook page eight offensive comments to videos and articles about individuals involved in the nationwide protests following the death of George Floyd. Rayell Johnson, a homicide detective and subordinate of Sgt. Edenfield was provided a copy of the comments from an unidentified co-worker. Thereafter, Detective Johnson reported the posts to his supervisor, who in turn, referred the matter to the Public Integrity Bureau ("PIB") for investigation. PIB investigator, Arlen Barnes conducted the investigation.

On October 26, 2020, a pre-disciplinary hearing was held to address Sgt. Edenfield's possible violations of the NOPD rules. During the hearing, Sgt. Edenfield admitted to posting the offensive comments on Facebook. The disciplinary hearing committee sustained the violations and recommended the following presumptive penalties: 1) a five-day suspension for violation "Rule 3: Professional Conduct, Paragraph 13, Social Networking Websites, Facebook, Myspace, Print or Transmitted Media, etc.;" and 2) a letter of reprimand for violation of "Rule 2: Moral Conduct, Paragraph 2, Courtesy." Thereafter Deputy Chief, Arlinda Westbrook ("Deputy Chief Westbrook"), disagreed with the committee's penalty recommendation for Rule 3 and recommended the punishment of dismissal, providing that "multiple Facebook posts/comments warrant a greater penalty at Level F (1st Offense - 60/80/D) as stated in the Disciplinary Matrix, Paragraph 41: Illegal Use of Social Media. Under Paragraph 41, employees shall not post any material on the Internet that violates any local, state or federal law, or includes hate speech, discrimination or advocates unnecessary force."

On December 4, 2020, NOPD's Superintendent, Shaun Ferguson, agreeing with Chief Deputy Westbrook's recommendation, issued a disciplinary letter, terminating Sgt. Edenfield. Sgt. Edenfield timely appealed his termination to the Commission. On February 4, 2021, a Civil Service hearing took place before Hearing Examiner Jay Ginsberg. At the hearing, Sgt. Edenfield admitted that his written Facebook comments were unprofessional. The hearing examiner recommended that Sgt. Edenfield's appeal be granted in part, and the appointing

2

authority be ordered to reinstate Sgt. Edenfield with all back pay and emoluments of employment less the eighty-day suspension already served.

On January 4, 2022, the Commission accepted the hearing examiner's recommendation, and granted in part Sgt. Edenfield's appeal, finding that "the Appointing Authority improperly aggravated the penalty from an 80-day suspension to a termination." The NOPD now appeals the Commission's decision.

**STANDARD OF REVIEW**

The Louisiana Constitution Article 10, § 8 provides in pertinent part, "[n]o person who has gained permanent status in the classified state or city service shall be subjected to disciplinary action except for cause expressed in writing." A civil service employee subjected to disciplinary action by an appointing authority has the right to appeal to the Commission. *Martin v. Dep't of Fire*, 2021-0070, p. 3 (La. App. 4 Cir. 10/20/21), 331 So.3d 379, 382 (citing *Honore' v. Dept. of Public Works*, 2014-0986, p. 8 (La. App. 4 Cir. 10/29/15), 178 So.3d 1120, 1126). As the appointing authority, NOPD is "charged with the operation of [its] department and it is within [its] discretion to discipline an employee for sufficient cause." *Bell v. Dep't of Police*, 2013-1529, p. 5 (La. App. 4 Cir. 5/21/14); 141 So.3d 871, 874 (quoting *Pope v. New Orleans Police Dep't*, 2004-1888, p. 6 (La. App. 4 Cir. 4/20/05), 903 So.2d 1, 4). The appointing authority must prove by a preponderance of the evidence good or legal cause for taking disciplinary action. *Martin*, 2021-0070, p. 3, 331 So.3d at 382 (citing *Honore'*, 2014-0986, p. 8, 178 So.3d at 1126). "Legal cause exists whenever an employee's conduct impairs the efficiency of the

public service in which the employee is engaged." *Bell*, 2013-1529, p. 5, 141 So.3d at 874 (quoting *Pope*, 2004-1888, p. 6, 903 So.2d at 5).

When a disciplinary action is appealed to the Commission, the Commission has a duty to decide independently from the facts presented whether the appointing authority had legal cause for taking disciplinary action, and if so, whether the punishment is commensurate with the dereliction. *Liang v. Dep't of Police*, 2013-1364, p. 8 (La. App. 4 Cir. 8/20/14), 147 So.3d 1221, 1225 (citing *Bell*, 2013-1529, p. 5, 141 So.3d at 874-75).

"On appeal from the Commission's ruling, appellate courts review findings of fact using the manifestly erroneous/clearly wrong standard of review." *Martin*, 2021-0070, p. 4, 331 So.3d at 382 (citing *Waguespack v. Dep't of Police*, 2012-1691, p. 3 (La. App. 4 Cir. 6/26/13), 119 So.3d 976, 978). "In determining whether the disciplinary action was based on good cause and whether the punishment imposed is commensurate with the dereliction, the appellate court should not modify the Commission's decision unless it is arbitrary, capricious, or characterized by an abuse of discretion." *Id.* (citing *Patin v. Dep't of Police*, 2012-1693, p. 2 (La. App. 4 Cir. 6/26/13), 159 So.3d 476, 478).

**DISCUSSION**

In the NOPD's sole assignment of error, it argues that the Commission abused its discretion by partially granting Sgt. Edenfield's appeal and reducing his discipline from dismissal to an eighty-day suspension because the NOPD has demonstrated that it properly determined that dismissal was commensurate with

4

the infraction and there were aggravating factors under its Disciplinary Matrix which warranted the maximum penalty.

The NOPD Disciplinary Matrix outlines penalty ranges that should be given for certain violations of the NOPD policies. Violations are assigned a level based on the seriousness of the offense, starting with the least serious, Level A and ending with the most serious, Level F. The Disciplinary Matrix, in pertinent part shows the following penalty schedule for the offense that Sgt. Edenfield was accused of violating:

USE OF SOCIAL MEDIA

Employees shall not post any material on the internet including but not limited to photos, videos, word documents, etc., that embarrasses, humiliates, discredits or harms the operation and reputation of the Police Department or any of its members.

| TITLE | LEVEL |
|---|---|
| ON DUTY/OFF DUTY | C (2-5-10) |

ILLEGAL USE OF SOCIAL MEDIA

Employees shall not post any material on the Internet that violates any local, state or federal law, or includes hate speech, discrimination or advocates unnecessary force.

| TITLE | LEVEL |
|---|---|
| ON DUTY/OFF DUTY | F (60-80-D[1]) |

A Level C offense has a presumptive penalty of a five-day suspension with a minimum penalty of two days and a maximum penalty of ten days. Further, a Level F offense has a presumptive penalty of an eighty-day suspension with a minimum penalty of sixty-days and a maximum penalty of dismissal. The

---

[1] The letter "D" represents the word "dismissal."

disciplinary matrix also outlines a non-inclusive list of aggravating factors that may be considered when assessing an employee's penalty.

At the February 4, 2021 hearing, Sgt. Edenfield testified to being familiar with the policies of the NOPD, including the disciplinary matrix.

> MR. LAUGHLIN [for NOPD]: Do you understand why officers are cautioned about social media use?
>
> SGT. EDENFIELD: I do.
>
> MR. LAUGHLIN: Is it because you are held out to the public. First of all, you will appear in court to testify in cases, correct, particularly as a homicide detective[?]
>
> SGT. EDENFIELD: Yes. I wasn't a homicide detective. I was a homicide sergeant. I have never investigated a homicide. I was a supervisor. I did oversee an investigation, but I was not a homicide detective. I wanted to clarify that.
>
> MR. LAUGHLIN: But, you can be called to testify in court?
>
> SGT. EDENFIELD: That would be correct.
>
> MR. LAUGHLIN: And, you have been called to testify?
>
> SGT. EDENFIELD: Sure.
>
> *   *   *
>
> MR. LAUGHLIN: So, you know the policy, and you fully understand the reasons for the policy, is to protect you against putting stuff out there that will come back to bite you when you are appearing in court and testifying, correct?
>
> SGT. EDENFIELD: Yes.

Further, at the hearing, Chief Deputy Westbrook testified as to the reason she determined that Sgt. Edenfield's comments were a Level F as opposed to a Level C violation.

> MR. LAUGHLIN: Why did you decide that Sergeant Edenfield's comments were a Level F as opposed to a Level C?

6

CHIEF DEPUTY WESTBROOK: I determined that the comments constituted hate speech, and advocated unnecessary violence.

MR. LAUGHLIN: Did you do this on a comment-by-comment review, or a totality review, or how did you do it?

CHIEF DEPUTY WESTBROOK: I looked at the totality of the comments, and the amount of comments that were made over, roughly, a week's period.

\* \* \*

HEARING OFFICER: So, why don't you just [discuss] the ones that cause you the most alarm, why don't you start with those?

CHIEF DEPUTY WESTBROOK: Okay. This one here that talks about the trash B, which was referring to an African-American female appeared to have racial terms to it, and of course, was very derogatory in nature to an individual of African-Americans, [sic] and also appeared to me, as a woman, was - - to use the word B was very sexist and derogatory to women.

MR. LAUGHLIN: Okay. 1B?

CHIEF DEPUTY WESTBROOK: 1B, when there is a reference to animals, again, it appeared to have racial terms to it, referring to individuals as animals. I know there were a number of different individuals here, but I had to look at each comment as to how members of the New Orleans public would view them, and how they see them, and generally the use of animals and sometimes the use of savages is sometimes considered derogatory terms.

\* \* \*

MR. LAUGHLIN: I can show you this one. How did you perceive this comment as a Level F?

CHIEF DEPUTY WESTBROOK: "Out for the count", I perceived it as it was, somewhat, alarming that because you are not really able to see the beginning of it, I would hope that as a police officer, we would take every incident and make a full determination without making comments, without a full investigation of it.

MR. LAUGHLIN: Okay. Does it create any problems for the police department for officers to be publicly commenting a bravo or a LMAO on exercises of force by another police officer?

CHIEF DEPUTY WESTBROOK: It just gives the impression that he condoned it, he is okay with it, and would be fine with any type of potential excessive force.

Additionally, Superintendent Ferguson testified that he took into consideration how Sgt. Edenfield's comments would be perceived by prospective jurors in criminal court. Superintendent Ferguson also testified that he was not informed of any possible mitigating factors such as Sgt. Edenfield's state of mind when making the offensive comments.

In *Rivet v. Dep't of Police*, 2018-0229, p. 1 (La. App. 4 Cir. 10/24/18), 258 So.3d 111, 115 this Court determined whether the Commission erred in upholding the suspension and termination of a NOPD police technician with permanent status. The appellant was disciplined for leaving work without permission of her supervisor and for providing a false statement. *Rivet*, 2018-0229, p. 1, 258 So.3d at 115. The appellant argued that the Commission erred in finding that the disciplinary action was commensurate with the offense, and termination was an overly harsh penalty under the facts of her case. *Id.* at pp. 7-8, 258 So.3d at 118. This Court, quoting *Stevens v. Dep't of Police*, 2000-1682, p. 8 (La. App. 4 Cir. 5/9/01), 789 So.2d 622, 627 provided:

> The public puts its trust in the police department as a guardian of its safety, and it is essential that the appointing authority be allowed to establish and enforce appropriate standards of conduct for its employees sworn to uphold that trust. Indeed, the Commission should give heightened regard to the appointing authorities that serve as special guardians of the public's safety and operate as quasi-military institutions where strict discipline is imperative.

*Id.* at p. 8, 258 So.3d at 118. In reviewing the Commission's decision to uphold the disciplinary action, the Court found that Commission's "authority to reduce a penalty can only be exercised if there is insufficient cause for imposing the greater penalty." *Id.* at p. 10, 258 So.3d at 119 (quoting *Pope*, 2004-1888, p. 5, 903 So.2d

8

at 5). The Court noted that despite the appellant's lengthy career with the NOPD and lack of prior discipline, it found no law or evidence in the record to permit it to reverse the Commission's decision. The Court further provided that "[c]onsidering the NOPD's role in the community and the necessity for strict discipline in quasi-military institutions like police departments," it could not say that the Commission acted arbitrarily or capriciously in upholding the decision of the NOPD. *Id.* at p. 11, 258 So.3d at 120.

In *Durning v. New Orleans Police Dep't*, 2019-0987 (La. App. 4 Cir. 3/25/20), 294 So.3d 536, this Court reviewed whether the Commission acted arbitrarily and capriciously in reducing the officer's discipline from termination to and eighty-day suspension. The officer in *Durning* was traveling in the department's vehicle to his annual firearm recertification training. After the training, the officer had an interaction with a sergeant where the sergeant smelled alcohol on the officer's breath. The sergeant notified a detective of the NOPD's Public Integrity Division, who also noticed the smell of alcohol on the officer's breath. *Durning*, 2019-0987, p. 1, 294 So.3d at 537.

The officer was transported to Innovative Risk Management, where he was given two breathalyzer test approximately twenty-five minutes apart and immediately placed on emergency suspension. After the disciplinary proceeding, the officer was terminated. The officer appealed his termination. The Commission granted the appeal in part, reinstating the officer and reducing his penalty to an eighty-day suspension for his violation of the use of alcohol while on duty. *Id.* at p. 2, 294 So.3d at 537-38.

This Court noted that the Commission considered the presumptive penalty of an eighty-day suspension for a first-time violation of NOPD's rule regarding the

use of alcohol while on duty. The Court agreed with the Commission in finding that the NOPD had not "established sufficient aggravating circumstances to warrant termination of an eleven-year veteran for the first-time violation of the rule against use of alcohol while on duty." *Durning*, 2019-0987, pp. 7-8, 294 So.3d at 540.

In the present case, the Commission relied on *Durning* in making its determination that Sgt. Edenfield's termination was not commensurate with the violation. The Commission noted "Superintendent Ferguson, the [decision maker], testified he did not consider any mitigating factors, including the officer's 20-year work history with no discipline, his emotional state at the time, and the earlier posts supportive of racial harmony." The Commission further noted that "[s]tatements of this character necessarily compromise an officer's ability to testify in court or lead other officers, so this factor should already be a reason the presumptive penalty is increased from a five-day suspension to an 80-day suspension." The Commission found that the appointing authority improperly aggravated the penalty from an eighty-day suspension to a termination. We disagree.

Unlike in *Durning*, there were aggravating factors present. As acknowledged by the Commission, Sgt. Edenfield made numerous offensive comments on social media, and such action compromised the officer's ability to testify in court or lead other officers. Certain reprehensible acts of a police officer, under any circumstance is prejudicial to the efficient operation of the police department. *See Gant v. Dep't of Police*, 1999-1351, p. 11 (La. App. 4 Cir. 1/5/00), 750 So.2d 382, 388, writ denied, 2000-0688 (La. 4/20/00), 760 So.2d 1161 (The *Gant* court found that the act of domestic violence at the hands of a police officer was reprehensible

10

and prejudicial to the efficient operation of the police department, and such act warranted termination).

Similar to *Rivet*, Sgt. Edenfield was an employee with permanent status, a lengthy career with the NOPD, and lack of prior discipline when he was terminated for violating the NOPD policies. Like the appointing authority in *Rivet*, the appointing authority in this matter had sufficient cause for imposing a greater penalty for Sgt. Edenfield's violation. It is essential that an appointing authority be allowed to establish and enforce appropriate standards of conduct of employees, and the Commission should give heightened regard to appointing authorities that serve as special guardians of the public's safety and operate as quasi-military institutions. *See Rivet*, 2018-0229, p. 8, 258 So.3d at 118 (quoting *Stevens v. Dep't of Police*, 2000-1682, p. 8 (La. App. 4 Cir. 5/9/01), 789 So.2d 622, 627). In light of the facts, we find that the Commission abused its discretion when it granted in part Sgt. Edenfield's appeal, reduced his termination to an eighty-day suspension, and ordered the NOPD to reinstate Sgt. Edenfield's position.

**CONCLUSION**

For the foregoing reasons, the decision of the Commission reinstating Sgt. Edenfield to his position with the NOPD with back wages and other emoluments of employment is reversed. The original disciplinary action imposed by the NOPD ordering the termination of Sgt. Edenfield is hereby reinstated.

**REVERSED**