978 So.2d 288 (2008)
Shawn MADISON
v.
DEPARTMENT OF POLICE.
No. 2007-C-2405.
Supreme Court of Louisiana.
April 4, 2008.
*289 PER CURIAM.
Plaintiff, Shawn Madison, is one of several employees of the New Orleans Police Department ("NOPD") who did not report for duty as scheduled following Hurricane Katrina and who were subsequently terminated by the NOPD for abandonment of duty without being provided notice and a pre-termination hearing. The individual officers appealed to the Civil Service Commission for the City of New Orleans ("CSC"), which held that the NOPD erred as a matter of law when it terminated the officers without holding pre-termination hearings and ordered that the officers be reinstated. NOPD appealed those decisions to the Louisiana Court of Appeal, Fourth Circuit. The court of appeal, sitting en banc, consolidated the individual cases and held that, under the circumstances presented by Hurricane Katrina and its aftermath, affording the officers a post-termination hearing was sufficient to satisfy the due process requirements of both the United States and Louisiana constitutions. Reed v. Department of Police, 06-1498 (La.App. 4 Cir. 10/10/07), 967 So.2d 606. The court of appeal vacated the decision of the CSC in each of the consolidated cases, remanded the cases to the CSC, and ordered the CSC "to receive from the parties such additional evidence as necessary to appropriately resolve each of the cases and to render a judgment on the merits of each case." Id. at 6, 967 So.2d at 606.
Some of the individual police officers filed writs challenging the decision of the court of appeal in this court. Most of those writ applications were denied. See Allen v. Department of Police, 07-2439 (La.2/15/08), 976 So.2d 182; Lee v. Department of Police, 07-2440 (La.2/15/08), 976 So.2d 182; Winford v. Department of Police, 07-2181 (La.1/11/08), 972 So.2d 1165; Washington v. Department of Police, 07-2103 (La.1/11/08), 972 So.2d 1164; Bradley v. Department of Police, 07-2075 (La.1/11/08), 972 So.2d 1164. However, for the reasons that follow, we grant the writ application filed by applicant herein, Shawn Madison, and vacate the decision of the court of appeal. We find that the CSC correctly found that Officer Madison is entitled to reinstatement of his employment because he "provided evidence that he should have been placed on a medical leave status rather than terminated."
Like the other police officers whose writs were denied by this court, Officer Madison did challenge the court of appeal's finding that a post-termination hearing was sufficient to protect his due process rights under the facts of this case. As we did when we denied the writ applications filed by the other officers, we reject that argument. However, unlike the other officers, Officer Madison's writ application was not based solely on his argument that *290 the NOPD violated his due process rights when it terminated his employment without affording him notice and a pre-termination hearing. In addition to that argument, Officer Madison asserted that the court of appeal erred when it consolidated his case with that of the other officers because he had already been afforded a complete post-termination hearing and because the CSC found that, following that hearing, he was entitled to reinstatement. Thus, Officer Madison claims, the court of appeal should have affirmed the CSC's decision reinstating his employment. Although the Department of Police asserted in its opposition to Officer Madison's writ application in this court that the hearing Officer Madison had received was not "complete," it specifically stated in its brief to the court of appeal that the CSC "conducted a full hearing to gather evidence on the merits of Madison's case" and that the CSC's decision to order Officer's Madison's reinstatement because he had not been afforded notice and a pre-termination hearing "belies common sense where all the evidence needed to make a decision on the merits is available."
In its reasons for ordering Officer Madison's reinstatement to his police duties, the CSC found specifically that Officer Madison "provided evidence that he should have been placed on a medical leave status rather than terminated." The standard of appellate review of the CSC's decision is set out in Bannister v. Department of Streets, 95-0404, p. 8 (La.1/16/96), 666 So.2d 641, 647. First, the Commission's factual determinations are reviewed under the clearly erroneous/manifest error standard of review. Id. Thus, regardless of our own view of the evidence, we may not disturb the Commission's findings of fact so long as they are reasonable. Stobart v. DOTD, 617 So.2d 880 (La.1993); Rosell v. ESCO, 549 So.2d 840 (La.1989).
We have reviewed the evidence presented at Officer Madison's post-termination hearing and find no manifest error in the CSC's finding that Officer Madison should have been placed on medical leave status rather than being terminated. At the hearing, NOPD Sergeant Walter Zschiedrich testified on behalf of the Department of Police that he investigated Officer Madison's failure to report to work following Hurricane Katrina. According to Sergeant Zschiedrich, he talked with Captain Bryson, Sergeant Andre Carter, and Sergeant Arland Barnes, NOPD employees who all stated their belief that Officer Madison may have been in the hospital in Louisiana or in M.D. Anderson in Houston. Sergeant Zschiedrich then went out to speak with Officer Madison's mother, Lois Madison, on October 18, and provided a phone number for Officer Madison to contact them, and that he also contacted M.D. Anderson and the hospital in Monroe, Louisiana, and learned that Officer Madison was not registered at either hospital. When Officer Madison did not "report in," Sergeant Zschiedrich said he "wrote it up as an abandonment" and turned in his report. When asked if Officer Madison had made any contact with "rank" or himself, Sergeant Zschiedrich responded "no," according to the information he received in his interviews.
Officer Madison testified that the last date he worked before Hurricane Katrina was the Thursday before the storm on Monday, and that he had been scheduled to report for duty on Tuesday morning. On that Saturday morning at about 8:30 a.m., Officer Madison said, he contacted Desk Officer Sharon Williams, who told him there was no definite plan concerning when officers were to report to duty. Thus, he told Officer Williams that he was going to take his family to Monroe, but he would be coming back. He left New Orleans *291 with his family about 11:30 a.m. on Sunday for a trip to Monroe that took 13 hours, he said, meaning that he got to Monroe at approximately 1 a.m. on Monday. While en route to Monroe, at about 4:30 or 5 p.m. on Sunday, Officer Madison said that he received a voice mail from Latrese Selders telling him to come to work at 4 p.m. on Monday. Once he received the voice mail message, there was no telephone communication and he was unable to get in contact with NOPD.
After he got his family settled in Monroe, Officer Madison testified, he was admitted to St. Francis Hospital with a bleeding ulcer, a pre-existing condition that he had been treated for at Tulane Hospital in August and May of that year. He was hospitalized from September 5 to September 11, 2005, after which it was discovered that he had a tumor in his stomach, actually inside the ulcer. On October 10, he went to M.D. Anderson in Houston, seeking cancer treatment. Thereafter, he came to New Orleans and talked to Lieutenant Ceravolo and other supervisors at the police station in the French Quarter. He also provided a discharge document from St. Francis Hospital to Sergeant Barnes and told him what he was doing. Officer Madison stated that he was admitted to M.D. Anderson for surgery to have the tumor removed on November 11, and that he was hospitalized for seven days. In the interim, he had hospital appointments three or four times a week. He provided a discharge from M.D. Anderson to Officer Williams once he could get up and was able to come back to New Orleans, sometime in early December or so.
Officer Madison testified that Lieutenant Cervolo asked him why he was bringing in his discharge papers, and that Lieutenant Cervolo advised him that he had been terminated on October 17. He never received any notice of his termination prior to his visit to New Orleans in December, he said. The discharge papers from St. Francis and M.D. Anderson were admitted into evidence at the hearing.
The record in this case provides a reasonable factual basis for the CSC's finding that Officer Madison should have been placed on medical leave status rather than being terminated. Although Sergeant Zschiedrich testified that his investigation indicated that Officer Madison had not contacted any of his "rank" prior to his termination, he also admitted that he was told by Captain Bryson, Sergeant Carter, and Sergeant Barnes that they believed Officer Madison was hospitalized either in Monroe or at M.D. Anderson. Further, Officer Madison testified specifically that he informed NOPD supervisors that he was undergoing surgery and treatment for stomach cancer. Thus, we find no manifest error in the CSC's decision ordering the reinstatement of Officer Madison's employment with NOPD.
Accordingly, the judgment of the court of appeal remanding this case to the CSC for a full hearing is reversed, and the decision of the CSC ordering that Officer Madison be reinstated to his job at NOPD reinstated.
COURT OF APPEAL JUDGMENT REVERSED;
CIVIL SERVICE COMMISSION DECISION REINSTATED.