TERRI F. LOVE, Judge.
 

 LShyra Allen was terminated from her position as a New Orleans Police Officer for leaving her post and failing to return following Hurricane Katrina. The Civil Service Commission found that Ms. Allen was terminated for legal cause and denied her appeal. We find that the Civil Service Commission’s denial of Ms. Allen’s appeal was not arbitrary or capricious and affirm.
 

 FACTUAL BACKGROUND AND PROCEDURAL HISTORY
 

 Shyra Allen was an officer with the New Orleans Police Department (“NOPD”) in the 7th Police District when Hurricane Katrina struck the City of New Orleans. While Ms. Allen reported for duty to Methodist Hospital on August 28, 2005, she allegedly left her post in a van of other officers on September 1, 2005, to find her family. Ms. Allen did not return to New Orleans until November 2, 2005, whereupon she received a termination letter, dated October 24, 2005, from the NOPD. The letter stated that Ms. Allen had “failed to report for duty” and had “not contacted any supervisors to date in your chain of command relative to your absence from work.” The letter also stated that Rule DC of the Rules of the Civil Service Commission gave it the authority to take “corrective action.” Ms. Allen appealed the NOPD’s determination.
 

 |2The Civil Service Commission (“CSC”) granted Ms. Allen’s appeal and reversed her termination, finding that she was denied due process due to the lack of a pre-termination hearing. The NOPD appealed. This Court vacated the decisions of the CSC in a consolidated case,
 
 [1]
 
 which consisted of NOPD officers who were denied a pre-termination hearing, and remanded the cases. Ms. Allen and the NOPD then submitted her case based on the facts presented in the original hearing. The CSC found that the NOPD terminated Ms. Allen for cause and denied the appeal. Ms. Allen’s appeal to this Court followed.
 

 Ms. Allen contends that the termination letter did not contain rules or regulations that she allegedly violated, that there was no evidence that she was “unwilling or unable” to perform her duties, and that, if Ms. Allen’s actions warranted discipline, termination was excessive.
 

 STANDARD OR REVIEW
 

 The CSC has the “exclusive power and authority to hear and decide all removal and disciplinary cases.” La. Const. Art. X, § 12(B). Cause must be expressed in writing to take disciplinary action against a permanent classified employee. La. Const. Art. IX, § 8(A). “The appointing authority is charged with the operation of his or her department and it is within his or her discretion to discipline an employee for sufficient cause.”
 
 Pope v. New Orleans Police Dep’t,
 
 04-1888, p. 6 (La.App. 4 Cir. 4/20/05), 903 So.2d 1, 4. “Legal cause exists whenever an employee’s conduct impairs the efficiency of the public service in which the employee is engaged.”
 
 Id.,
 
 04-1888, p. 6, 903 So.2d at 5. The burden of proving the impairment remains with the NOPD, as the appointing authority.
 
 Cittadino v. Dep’t of Police,
 
 558 So.2d 1311, 1315 (La.App. 4th Cir.1990).
 

 
 *969
 
 Appellate courts review the factual findings of the CSC using the clearly erroneous/manifest error standard of review.
 
 Madison v. Dep’t of Police,
 
 07-2405, p. 3 (La.4/4/08), 978 So.2d 288, 290. If the findings of the CSC are reasonable, this Court cannot reverse the CSC on appeal.
 
 Id.
 
 As to the CSC’s determination of legal cause and the punishment awarded, this Court will not disturb the ruling absent evidence of arbitrariness, capriciousness, or characteristics of an abuse of discretion.
 
 Cure v. Dep’t of Police,
 
 07-0166, p. 2 (La.App. 4 Cir. 8/1/07), 964 So.2d 1093, 1094-95. A CSC decision is arbitrary and capri cious if no rational basis exists as a foundation for the decision.
 
 Id.,
 
 07-0166, p. 2, 964 So.2d at 1095.
 

 TERMINATION LETTER
 

 The Louisiana Constitution provides, in regards to disciplinary proceedings against a classified employee, that:
 

 No person who has gained permanent status in the classified state or city service shall be subjected to disciplinary action except for cause expressed in writing. A classified employee subjected to such disciplinary action shall have the right of appeal to the appropriate commission pursuant to Section 12 of this Part. The burden of proof on appeal, as to the facts, shall be on the appointing authority.
 

 La. Const. Art. X, § 8(A). The United States Supreme Court held that an employee, like Ms. Allen, must be given notice and afforded an opportunity to respond to the charges against her to ensure that the requirements of the 14th Amendment Due Process Clause are fulfilled.
 
 Cleveland Bd. of Educ. v. Loudermill,
 
 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985);
 
 Webb v. Dep’t of Safety and Permits,
 
 543 So.2d 582 (La.App. 4th 1989). “The purpose of requiring cause expressed in writing is to apprise the employee in detail of the [¡grounds upon which the dismissal is based and to limit any subsequent proceedings to the stated grounds.”
 
 Lemoine v. Dep’t of Police,
 
 348 So.2d 1281, 1283 (La.App. 4th 1977).
 

 Ms. Allen contends that the termination letter did not contain rules or regulations that she allegedly violated sufficient to provide notice. Ms. Allen’s termination letter stated, in part:
 

 On or about September 2, 2005 you failed to report for duty and have not contacted any supervisors to date in your chain of command relative to your absence from work.
 

 Rule IX of the Rules of the Civil Service Commission of the City of New Orleans stipulates that an appointing authority may take corrective action when an employee in the classified service is unable or unwilling to perform the duties of their position in a satisfactory manner. Therefore, in light of the above, you are hereby notified that you are being dropped from the rolls of the New Orleans Police Department for abandonment of job effective October 29, 2005.
 

 Ms. Allen avers that the letter was vague and failed to apprise her of the specific charge.
 

 Although the letter includes only Rule IX, the remainder of the letter describes the reason for discipline as the failure to return to duty once leaving “[o]n or about September 2, 2005” and failing to advise her supervisors about her absence. The CSC’s decision stated that the “[a]ppellant left her post without the permission of anyone in her chain of command, and failed to return prior to her termination.” This statement consists of the same factual allegations presented in Ms. Allen’s termination letter. Therefore, we find that this assignment is without merit, as the termination letter apprised Ms. Allen of the
 
 *970
 
 accusations against her and she presented a defense to these allegations before the CSC’s hearing examiner.
 

 |
 
 .PROOF OF ALLEGED OFFENSE & PUNISHMENT
 

 The CSC “has a duty to decide independently from the facts presented whether the appointing authority has a good or lawful cause for taking disciplinary action and, if so, whether punishment imposed is commensurate with the dereliction.”
 
 Whitaker v. New Orleans Police Dep’t,
 
 03-0512, p. 2 (La.App. 4 Cir. 9/17/03), 863 So.2d 572, 574. The NOPD, as the appointing authority, must prove by a preponderance of the evidence “the occurrence of the complained of activity and that the conduct complained of impaired the efficiency of the public service.”
 
 Id.
 

 At Ms. Allen’s initial hearing, Captain Robert Bardy stated that he was the police captain of the 7th Police District. Captain Bardy testified that Ms. Allen left her post on September 1, 2005, without permission. Captain Bardy stated that four vans of people left on September 1, 2005, and that one van was allowed to cross the river to “make family contacts,” and retrieve medical supplies and food. However, no one was given permission to leave for an extended period of time. Following Ms. Allen’s absence, Captain Bardy declared that Ms. Allen did not call him to report back for duty; however, he thought she visited the temporary headquarters in the 200 block of Bourbon Street at some point.
 

 Sergeant Joseph Lorenzo testified, as the investigating officer, that Ms. Allen failed to return to duty by October 17, 2005, which was the date of his report on the investigation.
 

 Ms. Allen testified that she was told to report to Methodist Hospital at around 5:30 or 6:00 p.m. on August 28, 2005. She stated that Captain Bardy said, on September 1, 2005, they could “leave and take care of our families, and if’ they “weren’t having any problems, then” they could “come back.” Ms. Allen stated |fithat she left in a van with other officers and attempted to contact Captain Bardy for a week to no avail. Ms. Allen conveyed that she relied upon the kindness of strangers to locate her family. After locating her family on or about September 10, 2005, Ms. Allen allegedly telephoned Captain Bardy, but he allegedly told her no one was being accepted back until “they” figured out what was going on. Further, when asked why she did not return or communicate with other supervisors, Ms. Allen testified that she had no other means to communicate with the NOPD and was unable to get into New Orleans. Ms. Allen did not return to New Orleans until November 2, 2005, upon which time she received the termination letter.
 

 Ms. Allen did not deny leaving her post and remaining in Texas until she returned to New Orleans on November 2, 2005. On the other hand, Ms. Allen contends that she should not be terminated because she allegedly attempted to contact Captain Bardy within the 14-day absent-without-leave rule.
 
 [2]
 
 However, Ms. Allen did not present corroborating evidence to support her testimony. Captain Bardy testified that Ms. Allen did not contact him. Given the juxtaposed testimony, the record supports the factual finding that Ms. Allen was absent without permission for two months following Hurricane Katrina. As such, we do not find that the CSC was arbitrary or capricious in finding that the NOPD terminated Ms. Allen for cause.
 

 EXCESSIVE DISCIPLINE
 

 Ms. Allen contends that her behavior did not warrant discipline given the
 
 *971
 
 conditions following Hurricane Katrina, but that if discipline was necessary, termination was excessive. We find this contention lacks merit. In support, Ms. Allen cites a number of cases in which NOPD officers left their post for a short 17period of time.
 
 [3]
 

 The CSC found that Ms. Allen was absent from her post for two months without permission. This Court held that the CSC did not err in terminating NOPD officers who were absent without permission in excess of fourteen days after Hurricane Katrina.
 
 [4]
 
 Given the CSC’s determination that Ms. Allen was absent from duties as a NOPD officer for two months without permission, we do not find that termination constituted excessive discipline and affirm.
 

 DECREE
 

 For the above mentioned reasons, we find that the CSC did not err in finding that the NOPD terminated Ms. Allen for cause and affirm.
 

 AFFIRMED.
 

 [1]
 

 .
 
 Reed v. Dep’t of Police,
 
 06-1498, 06-1500, 06-1647, 07-0171, 07-0360, 07-0361, 07-0364, 07-0366, 07-0367, 07-0368, 07-0796, 07-0797 (La.App. 4 Cir. 10/10/07), 967 So.2d 606.
 

 [2]
 

 .
 
 See Bradley v. Dep’t of Police,
 
 07-0794 (La.App. 4 Cir. 9/26/07), 968 So.2d 226.
 

 [3]
 

 .
 
 See Parker v. Dep't of Police,
 
 07-1546 (La.App. 4 Cir. 1/24/08), 977 So.2d 180;
 
 Hines v. Dep't of Police,
 
 06-1218 (La.App. 4 Cir. 12/19/07), 974 So.2d 87.
 

 [4]
 

 .
 
 See Aubert v. Dep’t of Police,
 
 09-0288 (La.App. 4 Cir. 8/26/09), 19 So.3d 1211;
 
 LeBlanc v. Dep't of Police,
 
 07-1168 (La.App. 4 Cir. 11/21/07), 972 So.2d 398;
 
 Bradley,
 
 07-0794, 968 So.2d 226.