TERRI F. LOVE, Judge.
| Joseph Meisch was terminated from his position as a New Orleans lieutenant police officer for his failure to report observations of possible criminal activity in a timely fashion. The Civil Service Commission found that Meisch was disciplined for cause, his discipline was commensurate with his offense and that there was no violation of Meisch’s constitutional right to due process. We find the Civil Service Commission did not act arbitrarily or capriciously in concluding that Meisch was disciplined for cause and the discipline was commensurate with the offense for violations of Rule 8, Paragraph 1, Professionalism and Rule 4, Paragraph 4b, Neglect of Duty (Supervisory Responsibility). Further, we find that there was no violation of his constitutional right to due process. As to the Civil Service Commission’s determination that Meisch violated and was disciplined for Rule 4, Paragraph 2, Instructions from an Authoritative Source, we vacate and set aside the Appointing Authority’s finding.

FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Joseph Meisch was a lieutenant with the New Orleans Police Department (“NOPD”) in the Fourth District when Hurricane Katrina struck the City of New Orleans. On September 2, 2005, Meisch was assisting the United States Border LPatrol and other NOPD officers to clear a plot of land for a helicopter landing behind the district station, which faced the levee of the Mississippi River. On that date, he observed two vehicles driving on the paved portion of the levee. The first vehicle drove off of the levee toward the river. The second vehicle, a truck, remained about two hundred yards behind. Soon after observing the first vehicle disappear behind the levee, Meisch observed black smoke emanating from the area where the vehicle disappeared. Meisch then observed Police Officer Greg McRae (“McRae”) appear from the area where the vehicle had left the road and from where smoke was rising. Meisch testified that he observed McRae come down the levee towards the district compound. As McRae approached Meisch, McRae told him, “don’t worry about it.” Quickly thereafter, Lieutenant Dwayne Scheuermann (“Scheuermann”) approached from Meisch’s right side. As Scheuermann walked past Meisch, Scheuermann said, “I’ve got it.” Meisch testified that he took that to mean that Scheuermann was handling “what transpired where Officer McRae was coming from.” Meisch stated that he saw no reason to investigate or report what he observed to his commander because another police lieutenant told him that he was handling the matter. He further stated that he knew that McRae worked for Scheuermann, and that Scheuermann was in a better position to investigate his own officer.
Meisch testified that two or three days later on September 5, 2005, around 3:00 a.m. he walked to the top of the levee hoping to get a cell phone signal to call his ■wife. At the top of the levee and aided by flashlight, he observed a burned [ (¡vehicle *210 containing what appeared to be human remains. Meisch stated that he was startled by what he observed. His only action at that time was to make a notation in a notebook, which he left at the Fourth District when he was later reassigned. Due to the challenges Hurricane Katrina presented, including lack of resources and a need to prioritize, NOPD officers were instructed by NOPD Command Staff to note the location of the deceased and leave bodies where they lie for later retrieval.[1] Meisch noted that in the wake of Hurricane Katrina there was no morgue for dead bodies and no detectives to investigate potential crimes.
Meisch testified that in 2009, he read a Times Picayune article detailing a federal investigation into a possible homicide committed by a New Orleans police officer. The article included allegations that McRae and Scheuermann attempted to destroy evidence of the dead body by driving the vehicle containing the body to the far side of the levee and incinerating the vehicle. After reading the article, Meisch testified he “put two and two together” and realized that in 2005 he may have observed the commission of a crime involving McRae and Scheuermann. Meisch then reported to his commander, Captain Robert Norton, asking for furlough to speak to the FBI agents conducting the criminal investigation. Meisch did not report what he knew to his commander, anyone in the police chain of command, or the Public Integrity Bureau (PIB). Meisch cooperated with the criminal investigation and testified at the federal criminal trial involving the factions of various police officers related to the homicide of Henry Glover and the subsequent actions and lack of actions by the New Orleans Police Department.[2]
After testifying under oath in the federal trial,[3] the appointing authority initiated an administrative investigation. Based upon Meisch’s federal trial testimony and the internal investigation that followed, the appointing authority determined that Meisch neglected his duty by failing to report his observations to his commander. Assistant Superintendent Kirk Bouyelas testified that he recommended Meisch’s termination because Meisch “should have done something” after observing the burned car with what appeared to be human remains. Bouyelas reasoned that, while the circumstances of Hurricane Katrina may have excused Meisch’s failure to report what he observed on September 2, 2005, because there was nothing to suggest a commission of a serious crime, once Meisch observed the burned vehicle and human remains, he should have known that it was a potentially serious matter possibly involving police officers. Bouye-las also testified that even assuming Meisch did not realize the seriousness of what he observed until 2009, he should have reported his observations internally to PIB as well as to the federal authorities.
Meisch filed a timely appeal of the disciplinary actions imposed with the Civil Service Commission of New Orleans (“CSC”). The CSC found that the NOPD disciplined Meisch for cause and denied his appeal. Meisch’s appeal to this Court followed.

\ STANDARD OF REVIEW

The CSC has the “exclusive power and authority to hear and decide all *211 removal and disciplinary cases.” La. Const. Art. X, § 12(B). In order to take disciplinary action against a permanent classified employee, cause must be expressed in writing. La. Const. Art. X, § 8(A). This court has previously established that the “appointing authority is charged with the operation of his or her department and it is within his or her discretion to discipline an employee for sufficient cause.” Pope v. New Orleans Police Dep’t, 04-1888, p. 6 (La.App. 4 Cir. 4/20/05), 903 So.2d 1, 4. “Legal cause exists whenever an employee’s conduct impairs the efficiency of the public service in which the employee is engaged.” Id., 04-1888 at p. 6, 908 So.2d at 5. The burden of proving the impairment rests with the NOPD as the appointing authority. Cittadino v. Dep’t of Police, 558 So.2d 1311, 1315 (La.App. 4th Cir.1990).
In Allen v. Dep’t of Police, 09-0589, p. 3 (La. 4 Cir. 11/12/09), 25 So.3d 966, 969, this court explained the standard of review for appellate courts as follows:
“Appellate courts review the factual findings of the CSC using the clearly erroneous/manifest error standard of review. Madison v. Dep’t of Police, 07-2405, p. 3 (La.4/4/08), 978 So.2d 288, 290. If the findings of the CSC are reasonable, this Court cannot reverse the CSC on appeal. Id. As to the CSC’s determination of legal cause and the punishment awarded, this Court will not disturb the ruling absent evidence of arbitrariness, capriciousness, or characteristics of an abuse of discretion. Cure v. Dep’t of Police, 07-0166, p. 2 (La.App. 4 Cir. 8/1/07), 964 So.2d 1093, 1094-95. A CSC decision is arbitrary and capricious if no rational basis exists as a foundation for the decision. Id., 07-0166, p. 2, 964 So.2d at 1095.”
Meisch raises three assignments of error. He argues the CSC acted arbitrarily and capriciously by (1) determining he was disciplined for cause, (2) | ^determining the discipline was commensurate with the alleged offense, and (3) failing to find a violation of the 14th Amendment of the United States Constitution and Louisiana Const. Art. 1, § 2 regarding due process. We address each assignment of error separately.

DISCIPLINE FOR CAUSE

Pursuant to the Louisiana Constitution,
“No person who has gained permanent status in the classified state or city service shall be subjected to disciplinary action except for cause expressed in writing. A classified employee subjected to such disciplinary action shall have the right of appeal to the appropriate commission pursuant to Section 12 of this Part. The burden of proof on appeal, as to the facts, shall be on the appointing authority.”
La. Const. Art. X, § 8(A).
The CSC “has a duty to decide independently from the facts presented whether the appointing authority has a good or lawful cause for taking disciplinary action and if so, whether punishment imposed is commensurate with the dereliction.”. Allen v. Dep’t of Police, supra at 4, 25 So.3d 966 at 970 (quoting Whitaker v. New Orleans Police Dep’t, 03-0512, p. 2 (La.App. 4 Cir. 9/17/03), 863 So.2d 572, 574.) As the appointing authority, the NOPD, must prove by a preponderance of the evidence the “occurrence of the complained of activity and that the conduct complained of impaired the efficiency of the public service.” Id.
At Meisch’s hearing, he testified that he was a lieutenant police officer assigned to the Fourth District. He testified that on September 2, 2005, while working behind the police station he observed two vehicles *212 driving along the paved portion of the levee. He then noticed the first vehicle drive off the levee toward the Mississippi River out of his sight, while the second vehicle remained about 200 yards away. Meisch also stated that shortly thereafter he noticed a 17plume of black smoke emanating from the area where the first car disappeared. Meisch testified that he then observed McRae coming down the levee towards the district station. When McRae approached Meisch he recalled McRae telling him, “don’t worry about it.” Almost immediately after, Scheuermann approached the station from Meisch’s right side. As Scheuermann walked past Meisch, Scheuermann said, “I’ve got it.” Meisch stated he believed there was no need to report his observations as another police lieutenant said he was handling it.
Two or three days later, Meisch walked to the top of the levee around 3:00 a.m. attempting to obtain a cell phone signal to call his wife. Aided by a flashlight, Meisch observed a burned vehicle containing what appeared to be human remains; the sight of which startled him. Meisch admits that he immediately connected the burned car with the plume of smoke he had seen three days earlier when Scheuermann and McRae appeared from over the levee behind the district station. Meisch testified that in 2005 his only action in regards to his observations was to note the location of the human remains and car in a notebook.
The appointing authority did not discipline Meisch for his observations on September 2, 2005. The CSC indicated in its decision in regards to the events of September 2, 2005:
“The Appointing Authority determined that the Appellant’s failure to investigate or report what he observed to this point was not a violation of internal rules. At this moment in time, the Appellant only knew that a car had driven off of the levee and that a plume of smoke appeared from where the car had disappeared. He also knew that a police officer may have been involved, but reasonably assumed that his superior officer was aware of what had occurred. The Appointing Authority concluded that the challenges caused by Hurricane Katrina, including the lack of resources and the need to prioritize, explained and justified the Appellant’s decision not to act upon what he observed.”
18This court agrees that Meisch’s failure to investigate or report his observations of September 2, 2005 do not violate the internal rules. The events of September 5, 2005, however, presented a separate duty.
Meisch contends that even after his observations on September 5, 2005, and his notation thereof, he still was not aware of any wrongdoing so as to require compliance with departmental rules and regulations. In assessing the facts, the appointing authority found that Meisch had violated Departmental Rule 3, relating to Professionalism. Specifically, Rule 3, Para. 1, Professionalism states:
“Employees shall conduct themselves in a professional manner with the utmost concern for the dignity of the individual with whom they are interacting. Employees shall not unnecessarily inconvenience or demean any individual or otherwise act in a manner which brings discredit to the employee or the New Orleans Police Department.”
In the present case, Meisch’s knowledge of possible criminal activity and potentially involving two police officers reasonably required him to report his observations. His failure to report discredits the NOPD. When Meisch observed the burned vehicle and the human remains he should have known that it was a potentially serious matter possibly involving the NOPD which *213 could discredit the NOPD in the public’s eye.
Meisch was also charged with violating Rule 4, Paragraph 4b, Neglect of Duty, in his supervisory capacity which states:
A member with supervisory responsibility shall be in neglect of his duty whenever he fails to properly supervise subordinates, or when his actions matters relating to discipline fail to conform to the dictates of Departmental Rules and Regulations.
Meisch argues that because he did not suspect or was cognizant of any wrongdoing by the NOPD, he was not required to conform to any Departmental Rules and Regulations because they “did not come into play.” Even under the 19strained and extraordinary circumstances of Hurricane Katrina, the CSC correctly pointed out that Meisch should have reasonably suspected a possible criminal act based on his observations on September 5, 2009. Thus, his failure to report his observations to PIB, his commander, or any authority in his chain of command did not conform with Departmental Rules and Regulations. It was not sufficient to rely on the brief exchange Meisch had with Scheuermann, even if he was not a suspect at the time, to excuse his duty to report. Furthermore, Meisch testified that when he observed the burned vehicle and the human remains, he suspected something was wrong and immediately linked it to McRae and Scheuer-mann. For these reasons, Meisch had a duty to conform with the Departmental Rules and Regulations.
Additionally, Meisch was charged with violation of Chapter 52.1, Paragraph 15 and 16. Rule 4, Paragraph 2, Instructions from an Authoritative Source, states:
Chapter 52.1 of the Internal Disciplinary Investigations, Paragraph 15 indicates that if a supervisory receives a citizen’s complaint, or observes or is cognizant of misconduct by an employee, the supervisor shall ...
Paragraph 16 indicates that if the violation involves actions or conditions which question the accused employee’s continued ability to perform his/her duty, the supervisor shall take the necessary steps to obtain the proper authorization to have the employee placed on emergency suspension or administrative reassignment.
Meisch has asked this court to clarify the CSC’s ruling regarding whether there was a violation of this rule. Meisch contends that the CSC determined that the appointing authority failed to establish that Meisch’s failure to report violated Rule 4 in regards to Instructions from an Authoritative Source. In a footnote to its decision, the CSC noted:
The Appointing Authority has failed to establish that [Meisch’s] failure to report to PIB violated internal rules regarding Instructions | )0from an Authoritative Source. Reporting to the federal authorities and his commander was sufficient. As the record clearly establishes, PIB was aware and informed of [Meisch’s] activities once he spoke to the FBI.
As the facts relate to Meisch’s actions in 2009, this court agrees with the CSC’s determination that Meisch’s actions to report to his commander and the federal authorities was sufficient. In 2009, he had sufficient information to reasonably suspect criminal misconduct involving McRae and Scheuermann.
Notably absent from the record before this court, however, is the basis for the CSC’s finding that Meisch violated Rule 4, Paragraph 2, Instructions from an Authoritative Source, particularly in light of the footnote to its decision. Therefore, this court is unable to discern what the viola *214 tion is based on considering the CSC found no violation of this rule. Because the record contains insufficient evidence to prove that Meisch was in violation of Rule 4, Paragraph 2, Instructions from an Authoritative Source, we find no rational basis for the CSC’s determination that Meisch violated the departmental rule. See Saacks v. City of New Orleans, 95-2074 (La.App. 4 Cir. 11/27/96), 687 So.2d 432, writ denied, 97-0794 (La.5/9/97), 693 So.2d 769 (finding that the record contained insufficient evidence to prove deputy chief violated departmental'rules). Accordingly, there was no evidence to support the upholding of the violation.
Therefore, we do not find that the CSC was arbitrary and capricious in finding that the NOPD had lawful cause for taking disciplinary action against Meisch for violations of Rule 3, Paragraph 1, Professionalism and Rule 4, Paragraph 4b, Neglect of Duty (Supervisory Responsibility). Furthermore, we vacate and set aside the Appointing Authority’s finding of Meisch’s violation of Rule 4, Paragraph 2, Instructions from an Authoritative Source.
| ^PENALTY COMMENSURATE WITH OFFENSE
The CSC has a duty to determine whether the appointing authority has a good or lawful cause for taking disciplinary action and if so, whether punishment imposed is commensurate with the dereliction. Walters v. Dep’t of Police, 454 So.2d 106, 114 (La.1984); See Taylor v. New Orleans Police Dep’t, 00-1992, p. 3 (La.App. 4 Cir. 12/12/01), 804 So.2d 769, 772 (2001). The discipline must have a rational basis to be commensurate with the dereliction or it is deemed arbitrary and capricious. Staehle v. Dep’t of Police, 98-0216 (La.App. 4 Cir. 11/18/98), 723 So.2d 1031, 1032, 1033; Walters, supra at 114.
Here, Meisch was terminated for one violation of Rule 4, Paragraph 4b, Neglect of Duty (Supervisory Responsibility) and one violation of Rule 4, Paragraph 2, Instructions from an Authoritative Source. Additionally, Meisch was demoted to Police Officer I for a second violation of Rule 4, Paragraph 4b, Neglect of Duty (Supervisory Responsibility) and suspended for 10 days for violations of Rule 3, Paragraph 1, relative to Professionalism. On appeal, Meisch argues that disciplinary action as it relates to Rule 4, Paragraph 4b, Neglect of Duty (Supervisory Responsibility) and Rule 4, Paragraph 2, Instructions from an Authoritative Source was arbitrary and capricious; therefore, we will only address the discipline’s commensurability of these offenses.

Neglect of Duty (Supervisory Responsibility)

Meisch was terminated for violation of Rule 4, Paragraph 4b, Neglect of Duty (Supervisory Responsibility). It is Meisch’s contention that the discipline deviates from the penalty schedule for violations of NOPD rules. Namely, Meisch argues there is a distinction between the penalties for violations of Neglect of Duty 112(General) and violations of Neglect of Duty (Supervisory Responsibility), the latter of which Meisch was charged.
The penalty for violation of Rule 4, Paragraph 4(a), Neglect of Duty (General) differentiates between the severity of the offense (Category 1-3) and whether it is a first, second, or third offense. The penalty for violation of Rule 4, Paragraph 4b, Neglect of Duty (Supervisory Responsibility), however, is differentiated by a first, second, or third offense. Meisch argues that because a first offense’s discipline range is a letter of reprimand to a 30 day suspension, the imposition of a penalty of termination is arbitrary and capricious.
*215 Conversely, the NOPD contends that there is a rational basis for Meisch’s termination. To support its contention the NOPD points to the appointing authority’s reasoning: “when one police officer observes another police officer appear from what he later learns to be a burned-out vehicle containing a dead body, he should be concerned regardless of the distractions and hardships caused by Hurricane Katrina.” The NOPD contends that the violation was egregious constituting a category 3 offense and is one that: “may affect the rights and liberties of another; affect job performance; and/or involves a serious administrative or criminal violation.” We find that based on the facts and circumstances surrounding this case the violation was such that it affected the rights and liberties of another, job performance of the NOPD, and involved a criminal violation. Thus, because of the severity of the offense and the degree to which the violation affects, we conclude that there is a rational basis for terminating Meisch and the CSC did not act in an arbitrary and capricious manner.

Instructions from an Authoritative Source

|1sAs previously addressed above, because this court finds that there is insufficient evidence to prove that Meisch violated Rule 4, Paragraph 2, Instructions from an Authoritative Source, this court also finds the penalty of termination imposed by the Appointing Authority and upheld by the CSC was erroneous.

Performance of Duty (Supervisory Responsibility)

Finally, Meisch avers that his demotion from the rank of police lieutenant to police officer is a departure from the penalty schedule. A first offense violation of Rule 4, Performance of Duty, Paragraph 4b, Supervisory Responsibility carries with it a penalty of a letter of reprimand to a 80 day suspension. The record reflects that Meisch was demoted to the rank of a police officer. This discipline is not in accordance with the penalty schedule for a violation of Rule 4, Performance of Duty, Paragraph 4b, Supervisory Responsibility. Based on the facts and circumstances of this case and the serious ramifications Meisch’s failure to comply with departmental rules and regulations had, we find there was a rational basis for his demotion.

VIOLATION OF DUE PROCESS RIGHTS

Meisch also argues that as a result of not receiving adequate notification he was not able to properly prepare his defense at the disciplinary hearing. The United States Supreme Court has held that a “tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the employer’s evidence, and an opportunity to present his side of the story.” Cleveland Bd. of Education v. Loudermill, 470 U.S. 532, 556, 105 S.Ct. 1487, 1495, 84 L.Ed.2d 494 (1985).
Meisch was aware that the disciplinary hearing was with regard to his actions and observations on two specific days in September 2005 in conjunction 1 uwith his testimony in the federal criminal trial involving the murder of Henry Glover. Meisch was reasonably informed of the charges against him in addition to the evidence before the appointing authority, namely his federal criminal trial testimony. In light of these facts, Meisch was adequately informed of the charges against him and was afforded an adequate opportunity to present his defense. Therefore, we do not find that there was a violation of Meisch’s due process rights.

*216
DECREE

For the reasons set forth above, we affirm and find the CSC did not act arbitrarily or capriciously in concluding that Meisch was disciplined for cause and the discipline was commensurate with the offense as it relates to violations of Rule 3, Paragraph 1, Professionalism and Rule 4, Paragraph 4b, Neglect of Duty (Supervisory Responsibility). We also find that there was no violation of his constitutional rights to due process. Furthermore, we find that there was insufficient evidence to support a violation of Rule 4, Paragraph 2, Instructions from an Authoritative Source. Accordingly, we affirm in part and vacate and set aside in part.
AFFIRMED IN PART; VACATED AND SET ASIDE IN PART.
DYSART, J., concurs in the result.

.A specialized Disaster Mortuary Operational Response Team (DMORT) later retrieved the bodies. However, the NOPD did not conduct an investigation into the deaths due to the circumstances associated with Hurricane Katrina and its effects.

. Through the federal investigation in which Joseph Meisch testified, Henry Glover was identified as the victim of the homicide committed by a New Orleans police officer.

. USA v. Warren, et al., LAED Case # 10-CR-154.