JOSHUA MCBURNIE      *      NO. 2022-CA-0253

VERSUS      *

     COURT OF APPEAL

NEW ORLEANS POLICE      *
DEPARTMENT

     FOURTH CIRCUIT

     *

     STATE OF LOUISIANA

* * * * * * *

APPEAL FROM
CITY CIVIL SERVICE COMMISSION ORLEANS
NO. 9262
Honorable Jay Alan Ginsberg, Hearing Officer
* * * * * *
**Chief Judge Terri F. Love**
* * * * * *

(Court composed of Chief Judge Terri F. Love, Judge Dale N. Atkins, Judge Pro
Tempore James F. McKay, III)

Donovan A. Livaccari
LIVACCARI VILLARRUBIA LEMON LLC
101 W. Robert E. Lee Blvd., Suite 402
New Orleans, LA 70124--2472

     COUNSEL FOR APPELLANT


Michael J. Laughlin
ASSISTANT CITY ATTORNEY
Elizabeth S. Robins
Deputy CITY ATTORNEY
Donesia D. Turner
CITY ATTORNEY
1300 Perdido Street
Suite 5E03
New Orleans, LA 70112

     COUNSEL FOR APPELLEE

**AFFIRMED**
**SEPTEMBER 28, 2022**

*TFL*

*DNA*

*JFM*

This appeal involves a civil service disciplinary action. Appellant, Officer Joshua McBurnie, appeals the Civil Service Commission's ("the Commission") decision which upheld the disciplinary action imposed against him by his employer, the New Orleans Police Department ("NOPD"). The NOPD determined that Officer McBurnie improperly deployed his Conducted Energy Weapon ("CEW"), also known as a taser, three times to apprehend a suspect, in violation of NOPD Rule 2, Moral Conduct, Paragraph 6, Unauthorized Use of Force. The multiple applications of the taser constituted a Level 4 use of force and a Level F violation, which carries a presumptive penalty of an eighty-day suspension. Finding mitigating circumstances, NOPD down-graded the penalty to a thirty-day suspension.[1] Officer McBurnie argued that he only applied the taser two times, a Level 2 use of force, Level C violation, which proscribes a presumptive penalty of

---

[1] Officer McBurnie also received two additional one-day suspensions for NOPD Rule 4, Neglect of Duty violations. These involved the use of his taser in a drive stun mode as a pain compliance technique and failure to provide a verbal warning prior to the use of his taser in the drive stun mode. Officer McBurnie did not contest these violations or the disciplinary action imposed.

1

a five-day suspension. On appeal, Officer McBurnie seeks review solely of the thirty-day penalty assessed.

The Commission's determination that NOPD met its burden of proof to establish that Officer McBurnie's applications of his taser constituted a Level 4 use of force, Level F violation, and to assess a thirty-day suspension was not arbitrary or capricious. Accordingly, we affirm the Commission's decision to deny Officer McBurnie's appeal.

## FACTUAL AND PROCEDURAL BACKGROUND

On October 19, 2019, Officer McBurnie and four other officers were dispatched to respond to a domestic disturbance call. The female suspect had allegedly threatened someone with a stick. Upon their arrival, the suspect fled on foot through the backyards of nearby homes. A chase ensued and Officer McBurnie encountered the suspect on the opposite side of a fence. He warned her to stop and advised her that she would get tased if she did not. She refused his verbal commands. Officer McBurnie then used his taser over the fence. The suspect "locked-up" and was disabled by the tase. The officers on the suspect's side of the fence were not close enough to apprehend the suspect during the period that she was disabled. Officer McBurnie then used his taser a second time as the suspect pulled out one of the taser probes and started to crawl away. He pulled the trigger for two seconds. Officer McBurnie's second use of the taser had no apparent effect in disabling the suspect, and she continued her flight.

Officer McBurnie caught up with the suspect again after another officer had physically restrained the suspect from going across another section of the fence. The suspect refused the officers' commands to let go of the fence. Officer McBurnie deployed the taser in "drive stun" mode against the suspect, which occurs when the trigger is pulled while the taser is in direct contact with the body. The suspect swiped at Officer McBurnie's arm, and he re-applied the taser. The suspect let go of the fence and was apprehended.

NOPD initiated a use of force investigation involving Officer McBurnie's multiple uses of his taser. The investigators reviewed Officer McBurnie's Body Worn Camera ("BWC") and a CEW firing log. The investigators concluded that Officer McBurnie applied his taser at least three times. At Officer McBurnie's disciplinary hearing before the NOPD, he admitted that he knew that the multiple uses of his taser were prohibited by policy. The NOPD sustained the charges against Officer McBurnie for violation of Rule 2: Moral Conduct, Paragraph 6, Unauthorized Force. [2] Referencing in part Officer McBurnie's admission that he pressed his taser directly onto the suspect in order to achieve compliance through the infliction of pain, NOPD classified the forced used as a Level 4, Level F violation ("Level 4") and assessed a presumptive penalty of eighty days. However, the NOPD found mitigating circumstances and down-graded the penalty to thirty days. The mitigating circumstances considered included that Officer McBurnie

---

[2] NOPD Rule 2: Moral Conduct; Paragraph 6 Unauthorized Force, provides that "[e]employees shall not use or direct unjustifiable physical abuse, violence, force or intimidation against any person."

had less than five years on the job; he was confused by the CEW policy; he took responsibility for his actions; and that the presumptive eighty-day suspension was more in line with an intentional use of unauthorized force, which NOPD found was not the case in this matter. Officer McBurnie appealed the thirty-day suspension to the Commission.

At the hearing before the Commission, Officer McBurnie stipulated that he violated the Rules that were sustained by the NOPD and that the only issue on appeal was the thirty-day suspension.[3] Officer McBurnie contended that the level of force used in the application of taser was a Level 2, Level C violation ("Level 2") with a presumptive penalty of five days. Hence, he argued that the thirty-day suspension imposed for a Level 4 violation was not commensurate with the infraction. The following witnesses testified at the hearing.

### Sgt. Clinton Givens

Sgt. Givens was the lead investigator in Officer McBurnie's use of force investigation. He met with Officer McBurnie at the scene. Sgt. Givens also reviewed Officer McBurnie's body camera video and the CEW firing log which documented the number of uses of the taser. Sgt. Givens explained that more than two applications of the taser, regardless of the duration of the application, constitute a Level 4 violation. He stated that Chapter 1.7.1 of NOPD's CEW policy defines an application as "[t]he actual contact and delivery of electrical impulses to the subject via probe discharge or drive stun." Sgt. Givens counted

---

[3] Officer McBurnie expressly stipulated at the Commission hearing that he was not contesting the two one-day suspensions imposed for the Rule 4 violations. *See* fn. 1.

4

the first application as when Officer McBurnie fired at the suspect when she was on the opposite side of the fence and she had neuro-muscular incapacitation ("NMI"), where her muscles locked up and she could not move. The second application occurred when the suspect had pulled one of the probes out and Officer McBurnie made a two-second trigger pull of his taser. The CEW firing log documented the second tase. Sgt. Givens clarified that although the suspect had pulled out one of the probes, "one probe doesn't mean that you don't get any electrical delivery. It just doesn't give you enough to lock your muscles up." Sgt. Givens conceded that the second application was ineffective, however, he said it still counted as an application "because the electricity went from your taser or CEW to the individual at the other end of that probe." Sgt. Givens described the next application as when Officer McBurnie applied the taser in drive stun mode after the suspect had refused to let go of the fence. He asserted that Officer McBurnie applied the taser against the suspect's back and fired; she swiped away at the taser, and Officer McBurnie again pushed the taser into her back and fired. Sgt. Givens counted these as the third and fourth applications.[4] Sgt. Givens testified that Officer McBurnie's use of the taser in drive stun mode as a pain compliance technique made the taser applications a Level 4 unauthorized use of force, regardless as to whether the first two applications were justified. Sgt. Givens emphasized that NOPD policy simply states that a Level 4 violation requires no more than two applications.

---

[4] For purposes of its penalty, the NOPD counted the drive stun application as one application.

Sgt. Givens was questioned on cross-examination about his characterization of the second taser use as an "attempted" application in his report.

Q. And, furthermore, it says it was an attempted application as she crawled away following the completion of the first cycle?

A. Yes.

Q. All right. So, the attempted application is attempted because it wasn't successful, correct?

A. It wasn't effective.

Sgt. Givens explained that "but while it [his report] says an attempt at an application, that was - - I guess that was my way of saying that it wasn't effective, but it was actually still an application."

### Deputy Superintendent John Thomas ("Chief Thomas")

Chief Thomas was assigned to the panel that conducted Officer McBurnie's disciplinary hearing. He testified that he was familiar with CEW policy and was involved with the negotiation of the original policy. Chief Thomas said that he counted three applications of Officer McBurnie's taser: the first occurred when both probes were discharged; the second happened with the two-second trigger pull; and the third application was the drive stun application.[5] He testified that he and the other panel members viewed the second use of Officer McBurnie's taser as an application because Officer McBurnie applied the weapon and pulled the trigger.[6] Chief Thomas testified that the panel deviated from assessing a

---

[5] Chief Thomas said that the panel considered Officer Givens' position that Officer McBurnie's stun drive tase amounted to a third and fourth application. He maintained that it was conceivable that when the suspect swung and knocked the taser away after initial contact, that Officer McBurnie's momentum caused the taser to hit her a fourth time. The panel did not conclude whether the stun drive application was three or four uses of the taser; however, it decided to call the stun drive tasing a third application.

presumptive penalty of eighty days for a Level 4 violation and recommended a thirty-day suspension. Chief Thomas advised that the mitigation factors considered in lowering the penalty included that Officer McBurnie was a young officer who had trained under an old CEW policy and that he was forthcoming. As to the second application of Officer McBurnie's taser, Chief Thomas stated that based on his understanding, a party still feels the effects of the electricity with the one probe. He conceded on cross-examination that in the event that Officer McBurnie's second use of the taser was not considered an application, then, the use of force level would amount to a Level 2 violation and the presumptive penalty would be five days. He added, however, that if the second tase was not an application, the debate would be whether or not Officer McBurnie's engagement and re-engagement of his taser in drive stun mode against the suspect constituted third and fourth applications. Chief Thomas testified that the CEW policy was developed to consider three applications of the taser as a Level 4 violation because of concern that repeated tasing could cause serious injury or death.

*Captain Jeffrey Walls*

Capt. Walls testified that Officer McBurnie worked for him at the time of the tasing incident. Capt. Walls said NOPD changed its tasing policy several times between 2015 and 2020 and noted that Officer McBurnie trained at the police academy at a time when it was permitted to drive stun an individual for compliance. Capt. Walls acknowledged that Officer McBurnie received training on the new policy. Capt. Walls said he did not observe that Officer McBurnie pulled

---

[6] Chief Thomas initially testified that an application took place even if someone pulled the trigger and missed. When he was shown that Chapter 1.7.17 defined an application as "the actual contact and delivery of electrical impulses to the subject," he admitted that he erred. Nevertheless, he still considered the second use of Officer McBurnie's taser as an application because Officer McBurnie made contact with one of the probes in the suspect.

the trigger in the second taser use. He also did not see actual contact with the suspect's skin required to complete the circuit in order for the second taser use to count as an application. He testified that when only one probe is attached, "that wouldn't be even half a ride [of electricity];" thereby, the taser's use would be ineffective. Capt. Walls described Officer McBurnie as a very good officer.

### Officer Joshua McBurnie

Officer McBurnie testified that he did not realize that he had pulled the trigger on the second tase until he saw the CEW firing log. He admitted that he applied the taser three times according to NOPD policy; however, because he thought he had only pulled the trigger on two occasions, he believed he only made two applications. Officer McBurnie said he saw no impact on the suspect from the second tase. On cross-examination, Officer McBurnie conceded that the CEW firing log showed that the second tase cycled to the suspect for two seconds and that the log showed he made three applications: a five-second duration cycle, a second trigger at a two-second cycle duration, and the drive stun application.

### Commission Decision

Upon review and analysis of the entire record, the Commission denied Officer McBurnie's appeal. The majority decision determined that NOPD carried its burden of showing that the complained-of conduct occurred and that Officer McBurnie applied his taser at least three times to the suspect. [7] Because NOPD considered all mitigating factors and reduced the penalty from eighty days to thirty days, the Commission did not disturb the penalty.

---

[7] The Commission denied Officer McBurnie's appeal by a 2-1 vote. The dissent agreed that the NOPD met its burden of proof to show the complained-of conduct occurred. However, it found that Officer McBurnie only applied the taser on two occasions and accordingly, would change the violation to a Level 2 use of force and reduce the thirty-day suspension to a five-day suspension.

Officer McBurnie timely appealed.

## STANDARD OF REVIEW

This Court discussed the standard of review of Commission decisions in *Allen v. Dep't of Police*, 2009-0589, p. 3 (La. App. 4 Cir. 11/2/09), 25 So.3d 966, 969, as follows:

> Appellate courts review the factual findings of the CSC using the clearly erroneous/manifest error standard of review. *Madison v. Dep't of Police,* [20]07–2405, p. 3 (La. 4/4/08), 978 So.2d 288, 290. If the findings of the CSC are reasonable, this Court cannot reverse the CSC on appeal. *Id.* As to the CSC's determination of legal cause and the punishment awarded, this Court will not disturb the ruling absent evidence of arbitrariness, capriciousness, or characteristics of an abuse of discretion. *Cure v. Dep't of Police,* [20]07–0166, p. 2 (La. App. 4 Cir. 8/1/07), 964 So.2d 1093, 1094–95. A CSC decision is arbitrary and capricious if no rational basis exists as a foundation for the decision. *Id.,* [20]07–0166, p. 2, 964 So.2d at 1095.

## DISCUSSION

The parties agree that Officer McBurnie violated NOPD's Rule 2 Unauthorized Use of Force Policy and do not dispute the underlying facts regarding Officer McBurnie's multiple uses of his taser in apprehending the suspect. The issue that requires resolution is the level of force used to assess the penalty. Officer McBurnie avers that the Commission's decision to uphold his thirty-day suspension was arbitrary and capricious in that the decision (1) disregarded the definition of "applied" or "application" as contained in Chapter 1.7.1 of NOPD's Operations Manual relative to taser use; (2) upheld an inappropriate penalty under the NOPD Disciplinary Penalty Matrix for Officer McBurnie's violations; and (3) that the decision lacked any rational basis. In reviewing these errors in their entirety, the propriety of the penalty assessed pivots on whether the level of force utilized by Officer McBurnie met the definition to constitute three applications of his taser or two applications.

9

***Chapter 1.7.1 "Application" Definition***

NOPD's Operations Manual, Chapter 1.7.1, CEW Policy defines "application" as "[t]he actual contact and delivery of electrical impulse to the subject via probe discharge or drive stun." Here, the parties agree that Officer McBurnie applied his taser in the first use against the suspect and in the third drive stun application. The dispute exists as to whether the second use of the taser— when Officer McBurnie pulled the trigger of his taser after the suspect had removed one of the probes—was an application.

Officer McBurnie argues that the second taser use should not count as an application because the circuit was not completed and the suspect was not slowed down or incapacitated. Officer McBurnie's argument is supported by his immediate superior, Capt. Thomas, who testified that the second tase was ineffective, noting that with only one probe attached, the tase would not deliver even a half a ride of electricity. However, Sgt. Givens, the lead investigator in this matter, and Chief Thomas, who helped to develop CEW policy, both testified that the triggering of a taser with only one probe attached delivers some electricity to the subject to count as an application. They pointed out that the definition of "application" does not require effectiveness or incapacitation.

We find the testimony of Sgt. Givens and Chief Thomas provided a rational foundation for the Commission's findings in calculating the number of applications. Accordingly, the Commission was not arbitrary and capricious in determining that Officer McBurnie applied his taser three times as defined by Chapter 1.7.1 of NOPD's CEW Policy.

***The Penalty***

The NOPD Operations Manual, Chapter 26.2.1, titled Disciplinary Matrix/Penalty Schedule ("Penalty Matrix") provides penalty ranges for all rule or policy violations. Officer McBurnie contends that the Commission erred in assessing the level of force used in his rule violations as a Level 4, instead of a Level 2. He emphasizes that he did not intend to pull the trigger on the second tase and that the second tase was ineffective. Level 2 and Level 4 use of force levels are defined, in part, as follows:

**LEVEL 2**

Level-2 uses of force include use of a CEW (including where a CEW is fired at a person but misses); and force that causes or could reasonably be expected to cause an injury greater than a transitory pain but does not rise to a Level [three] use of force . . .

**LEVEL 4**

Level- 4 use of force includes all "serious use of force" as listed below . . .

(g) More than two applications of a CEW on an individual during a single interaction, regardless of the mode or duration of the application . . .

The penalty matrix for a Level 2 use of force has a presumptive penalty of a five-day suspension with a minimum penalty of two days and a maximum penalty of five days. A Level 4 offense has a presumptive penalty of an eighty-day suspension with a minimum penalty of sixty days and a maximum penalty of dismissal.

In the case *sub judice*, having determined that NOPD properly found that Officer McBurnie applied his taser more than two times, Officer McBurnie's use of force qualifies as a Level 4 offense. The Commission is not charged with disciplining the employees of the appointing authority. *See Porche v. Office of Police Secondary Emp.*, 2018-0431, p. 2 (La. App. 4 Cir. 11/14/18), 318 So.3d

732, 735. Instead, "[t] he appointing authority is charged with the operation of his or department and it is within his or her discretion to discipline an employee for sufficient cause." *McGaw v. New Orleans Police Dep't*, 2020-0564, p. 6 (La. App. 4 Cir. 6/9/21), 323 So.3d 901, 905 (quoting *Whitaker v. New Orleans Police Dep't*, 2003-0512, p. 5 (La. App. 4 Cir. 9/17/03), 863 So.2d 572, 575). In reviewing an appointing authority's disciplinary decisions, the Commission can exercise its authority to reduce or modify a penalty only if there is insufficient cause to assess the greater penalty. *Porche*, 2018-0431 p. 3, 318 So.3d at 735. Having determined that Officer McBurnie made more than two applications of his taser, his level of force met the penalty matrix for a Level 4 violation. NOPD considered Officer McBurnie's cooperation with the investigation, his confusion over CEW policy, and his level of intent in its decision to find mitigating circumstances to reduce the penalty and impose a thirty-day suspension. The penalty assessed was well below the eighty-day presumptive penalty guidelines for a Level 4 violation. The record supports sufficient cause for the penalty imposed by the NOPD. Thus, the Commission did not abuse its discretion in electing not to disturb the thirty-day suspension. The penalty assessed was commensurate with the infraction.

## DECREE

Based on the foregoing reasons, we affirm the Commission's decision to deny Officer McBurnie's appeal.

**AFFIRMED**

12